SHEFFIELD AND BIRMINGHAM COAL, IRON AND RAILWAY COMPANY *v.* GORDON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ALABAMA.

No. 176. Argued December 20, 1893. — Decided January 15, 1894.

Exceptions to the report of a master should point out specifically the errors upon which the party relies, not only that the opposite party may be apprised of what he has to meet, but that the master may know in what

particular his report is objectionable, and may have an opportunity to correct his errors or reconsider his opinions.

The main object of a reference to a master being to lighten the court's labors, the court ought not to be obliged to rehear the whole case on the evidence, when the report is made.

If the report of a master is clearly erroneous in any particular, it is within the discretion of the court to correct that error.

When a contract provides that work done under it shall be examined by a superintendent every two weeks, and if done to his satisfaction it shall be a final acceptance by the other party, so far as done, the acceptance by the superintendent forecloses that party from thereafter claiming that the contract had not been performed according to its terms.

In the absence of a certificate by a master that the entire evidence taken by him was sent up with his report, it is impossible to impeach his conclusions upon it.

The proceedings in this case were taken within the time required by the statutes of Alabama.

THIS was an intervening petition filed by the firm of Gordon, Strobel & Laureau, in a case pending in the Circuit Court for the Northern District of Alabama, for the foreclosure of a deed of trust, setting up and claiming a mechanic's lien on certain furnace property described in the petition, to secure the payment of a large balance due to them as builders. The Central Trust Company of New York, trustee under the deed of trust, and plaintiff in the foreclosure suit; the Sheffield and Birmingham Coal, Iron and Railway Company, the mortgagor; Jacob G. Chamberlain, who was receiver in the foreclosure suit, and one Charles D. Woodson, as holder of certain bonds of the company, were made defendants to the petition. Petitioners' claim arose under a contract whereby they agreed to construct for the Alabama and Tennessee Coal and Iron Company, the predecessor of the appellant corporation, three iron blast furnaces at Sheffield, in Colbert County, Alabama, for $564,000, ninety per cent of which amount was to be paid from time to time during the construction of the furnaces, and which ninety per cent had been practically paid as agreed between the parties, the claim of the appellees being the balance, together with some amounts alleged to have been paid out for excessive freight charges, and upon material furnished to repair and reconstruct one of the furnaces.

Joint and several answers were filed by the defendants, setting forth certain defences to the petition, and demanding proof of each allegation thereof. It was admitted that the defendant company had become liable for whatever amount was due the petitioners by the original Alabama and Tennessee Coal and Iron Company. The main defence was that Gordon, one of the intervenors, had undertaken to supervise the blowing in of one of the three furnaces, in which operation the furnace was ruined and subsequently abandoned; that in the blowing in of a second furnace, it suffered such damage that it required about six months to put it in good condition; that the furnaces were not built according to the plans, specifications, and agreements of the contract, but were constructed in so faulty and inadequate a manner that their daily expense for coal was much larger than it would have been had they been properly constructed.

A decree was entered by consent referring the case to a special master to examine and report the facts as to the existence of the contract, the construction of the furnaces, the payments made therefor, the amount due the petitioners, the existence of their lien, and also to report upon all matters of defence stated in the answer.

In pursuance of this order the master took the depositions of a number of witnesses, found the facts, and reported a balance due of $57,808.12, with interest from September 18, 1888. Exceptions were filed to this report by the defendants, which upon argument were overruled by the court, and a final decree entered in favor of the intervenors for the amount reported by the master. From this decree an appeal was taken to this court.

*Mr. Henry B. Tompkins* for appellant.

I. The rule is well settled that the acceptance of work built under a written contract does not estop the owner from showing a non-compliance by the builder with the contract and corresponding damage to him. The effect of his acceptance is to hold him liable on a *quantum meruit*. *Thomas* v.

*Ellis*, 4 Alabama, 108 ; *Merriwether* v. *Taylor*, 15 Alabama, 735 ; *Hawkins* v. *Maddox*, 19 Alabama, 54 ; *Bell* v. *Teague*, 85 Alabama, 211 ; *Cutcliff* v. *McAnally*, 88 Alabama, 507.

II. In actions by which it is sought to declare and enforce a lien given by statute to mechanics and material men and the like, every fact necessary to the creation of the lien must be alleged and proven. The statute requires it (the claim of lien) to be filed within the time, and that it was so filed must, as we have seen, be averred in the complaint and proved on the trial. *Corrugating Co.* v. *Thacher*, 87 Alabama, 458.

The filing of the claim of lien in the office of the judge of probate of a county in the State of Alabama, being a proceeding or record of a state court, could only be proven in a Federal court by copy of same duly certified according to the acts of Congress. The enforcement of the claim of lien by appellees was in the nature of a proceeding *in rem ;* and the right or title, to subject the property, should be clearly shown. *Pennoyer* v. *Neff*, 95 U. S. 714, 733, 734.

III. Filing the claim of lien properly sworn to in the office of the judge of probate is not giving the notice such as the statute requires to invest the mechanic or contractor with a lien. But notice of the same must be given, and this is only done by having the statement duly recorded. *Bell* v. *Teague*, 85 Alabama, 211 ; *Chandler* v. *Hanna*, 73 Alabama, 390.

IV. The court was without jurisdiction to decree a lien in favor of appellees against the property of appellant, because the lien at the time of the filing of the petition for its enforcement had become lost under the statutes of Alabama providing for mechanics' and contractors' liens and their enforcement.

*Mr. W. A. Gunter* and *Mr. R. C. Brickall* for appellees.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

An interlocutory decree was entered in this case by consent, and the questions in issue arise upon exceptions to the report

of the special master, to whom the case was referred to take proofs, and to report the amount found by him to be due. He was not, however, required to report the testimony. Defendants excepted to so much of said report and the findings of the master in reference thereto as determined —

"1. That the defences set up by the defendants are not sustained by the evidence;

"2. That the petitioners, Gordon, Strobel & Laureau, are entitled to be paid the contract price for their work and material;

"3. That the sum of $57,808.12, with interest from the 18th day of September, 1888, is the amount due the intervenors; and

"4. That the intervenors have a lien upon the property described in their petition; and for grounds and reasons for such exceptions they assign the following:

"1st. Because the evidence in the case sustained the defences set up by the defendants; and showed, 2d, that the work and materials done and furnished by intervenors were not up to the requirement and guaranty of their contract, by which the value of the plant, as built and equipped, was worth sixty or seventy-five thousand dollars less than the contract price; and, 3d, because such report is contrary to the weight of testimony on each of the matters so reported."

There are two difficulties in the way of considering the case upon these exceptions.

(1) The exceptions themselves are too broad, and amount simply to a general denial of the facts and conclusions of the master. The first three are to the finding of the master that the defences are not sustained, that the petitioners are entitled to the contract price, and that the sum awarded is the amount due. In other words, they are general denials of the merits of the claim. The fourth is a denial of petitioners' lien because the evidence sustained the defences, because the work was not up to the requirements of the contract, and because the report was against the weight of testimony. This exception is scarcely more definite than the other. There are no exceptions here to the findings of the master, now assigned

as error, that the intervenors did not guarantee that the work or plant, *as a whole*, should be adequate in design, strength, and capacity for the purposes intended and specified; or to the finding that the petitioners were entitled to be paid the freight excess payments and extra material furnished for the construction of the furnaces, or that the furnaces had attained the product in the making of pig iron, as specified in the contract.

Proper practice in equity requires that exceptions to the report of a master should point out specifically the errors upon which the party relies, not only that the opposite party may be apprised of what he has to meet, but that the master may know in what particular his report is objectionable, and may have an opportunity of correcting his errors or reconsidering his opinions. The court, too, ought not to be obliged to rehear the whole case upon the evidence, as the main object of a reference to a master is to lighten its labors in this particular. In the case of *Dexter* v. *Arnold*, 2 Sumner, 108, 125, an exception to a report of a master that he had stated and certified that there was due on a certain mortgage a certain sum when he ought to have reported that there was nothing due, was held by Mr. Justice Story to be quite untenable. "It is too loose and general in its terms," said he, "and points to no particulars. It comes to nothing, unless specific errors are shown in the report; and those errors, if they exist, should have been brought directly to the view of the court in the form of the exception itself. At present it amounts only to a general assignment of errors, and the argument on this exception has shown none."

The same rule was laid down in *Story* v. *Livingston*, 13 Pet. 359, 366, wherein the exceptions to the report of a master were held to be too general, indicating nothing but dissatisfaction with the entire report; and furnishing no specific grounds, as they should have done, wherein the defendant had suffered any wrong, or as to which of his rights had been disregarded. The court observed that "exceptions to a report of a master must state, article by article, those parts of the report which are intended to be excepted to." The court cited with ap-

proval the case of *Wilkes* v. *Rogers*, 6 Johns. 566, wherein it was said that exceptions to reports of masters in chancery are in the nature of a special demurrer; and the party objecting must point out the error, otherwise the part not excepted to, will be taken as admitted.

So in *Greene* v. *Bishop*, 1 Cliff. 186, 191, Mr. Justice Clifford held that "general allegations of error, without pointing to any particulars, are clearly insufficient, for the reason that, if allowable, the losing party might always compel the court to hear the case anew, and should that practice prevail, references such as made in this case would become both useless and burdensome, as they would only operate to promote delay and increase the expenses of litigation, without relieving the court from any of the labor of the trial or ever accomplishing anything of value to either party." See also *Stanton* v. *Alabama &c. Railroad*, 2 Woods, 506, 518.

That this is not a novel practice in Alabama is evident from a number of decisions of the Supreme Court of that State affirming the general doctrine in the most specific terms. *Alexander* v. *Alexander*, 8 Alabama, 797; *Royall's Administrator* v. *McKenzie*, 25 Alabama, 363; *O'Reilly* v. *Brady*, 28 Alabama, 530; *Mahone* v. *Williams*, 39 Alabama, 202. See also *White* v. *Hampton*, 10 Iowa, 238; *Reed* v. *Jones*, 15 Wisconsin, 40; *Smalley* v. *Corliss*, 37 Vermont, 486, 492. Cases are referred to a master, not on account of his presumed superior wisdom, but to economize the time and labor of the court, and as exceptions are usually filed to his report, if they are so general as to require a rehearing of the entire case, there is really nothing saved by a reference.

It is true that if the report of the master is clearly erroneous in any particular, it is within the discretion of the court to correct the error, but we see no occasion for exercising such discretion in this case. It would appear from the report and the recital in the final decree of the court that the main contest was over the construction of a certain guaranty in the contract that "all the work" was "to be done in good and workmanlike manner and of suitable material, and each part to be adequate in design, strength, capacity, and workman-

ship for the purposes for which it is intended, for the sum of $564,000." Immediately following this is a stipulation that the "superintendent shall pass upon the work every two weeks, and if to his satisfaction, it shall be a final acceptance by" the company "so far as done. But if not in compliance with the contract, and to his satisfaction, as to the quality of material or character of workmanship," petitioners agreed "to make it so as rapidly as possible." The evidence showed without contradiction that one Doud, who was the superintendent of the Coal and Iron Company, made inspections and supervised the work from time to time, and accepted it when, in his judgment, it was in compliance with the contract. The contractors claimed to have finished the work on the 8th of August, 1888, and requested its final acceptance. The president of the Sheffield and Birmingham Coal, Iron and Railroad Company, which had become, by consolidation with the Alabama and Tennessee Coal and Iron Company, responsible on this contract, referred the matter of final acceptance to Mr. Doud, the superintendent, who on the 18th of August accepted, in writing, the plant as completed according to the terms of the contract.

The master and the court agreed in holding that the intervenors did not guarantee in their contract that the work or plant *as a whole* should be adequate in design, strength, capacity, and workmanship for the purposes intended and specified, and that, as an acceptance of the work bi-weekly as it progressed was shown, and a further acceptance of the whole on completion of the contract was made by the superintendent in compliance with the terms of the contract, such acceptance in the absence of fraud or mistake on the part of the superintendent was conclusive upon the company. We see no reason to question the correctness of this conclusion. It is difficult to see what effect should be given the acceptance of the work by the superintendent, if not to foreclose the parties from thereafter claiming that the contract had not been performed according to its terms. *Martinsburg &c. Railroad* v. *March*, 114 U. S. 549. There was, it is true, a proposal for an additional remuneration of $20,000 to guarantee a certain

product, with an additional proposal that neither the ten per cent reserved in the hands of the company, nor the $20,000, should become due until the specified product had been attained; but it does not appear that this proposal had ever been accepted, nor any agreement made to pay the extra $20,000 for the attainment of this product. The only guaranty in the proposal as accepted was that each part — by which we understand each part as related to every other part — should be adequate in design, strength, capacity, and workmanship for the purpose for which it was intended. In view of the other provisions, we think the court was correct in holding that there was no guaranty intended of the plant as a whole.

(2) There is another objection, however, to our examination of the facts in this case. The order referring the case to the special master, though minute in its details, did not require him to send up the testimony; neither does he purport to do this in his report; and while a number of depositions taken before him are filed, there is nothing to indicate that these were all the testimony in the case. He finds in this connection that the defences set up by the defendants are not sustained by the evidence, and that the petitioners, Gordon, Strobel, and Laureau, are entitled to be paid the contract price for the material.

In the absence of any certificate that the entire evidence taken by the master was sent up with his report, it is impossible to impeach his conclusion in this particular. *Scotten* v. *Sutter*, 37 Michigan, 526; *Nay* v. *Byers*, 13 Indiana, 412; *Fellenzer* v. *Van Valzah*, 95 Indiana, 128. There is no presumption that all the testimony was sent up.

(3) A further objection is made that the proofs contained in the record do not disclose the filing of the claim of lien in the office of the judge of probate of Colbert County, as required by the statute. The master, however, finds that on the 18th of January, 1889, a verified statement of the amount claimed to be due on this contract was filed with the judge of probate of Colbert County in substantial conformity with section 3022 of the Code of Alabama of 1886, and there is no evidence to

impeach his finding in that particular, and no objection or exception taken to the want of proof upon this point. There would appear to have been, from a memorandum we find in the testimony, a mechanic's lien introduced in evidence as an exhibit; but as it is not attached to the record, it is impossible to say that it does not bear out the finding of the master. The statute of Alabama requires a statement in writing, claiming a lien, to be filed in the office of the judge of probate within six months after the indebtedness to the lien holder has accrued, and as it appears that the work in this case was finished on August 8, 1888, and accepted August 18, that the unpaid residue of the consideration was not due for several months thereafter, and that suit was begun on February 11, 1889, there seems to be nothing in the objection that proceedings were not taken within the time required by law.

Upon the whole, we think the decree of the court below was correct, and it is, therefore,

*Affirmed.*