NEWMAN et al. v. UNITED STATES.

(Circuit Court, W. D. Virginia. February 10, 1897.)

1. CONTRACTS WITH GOVERNMENT—ROAD CONSTRUCTION—ESTIMATES AND MEASUREMENTS OF ENGINEER.

Where contractors engaged in road building for the United States have agreed by the terms of their contract that the engineer in charge shall determine the classification of the excavations, the grading of the ground, the depth and foundation of the culverts, and that he shall have general supervision, with power to accept or reject any portion of the work, such contractors are conclusively bound by the engineer's estimates, and cannot recover beyond what he has allowed them, in the absence of fraud, or of such gross mistake as would imply bad faith on his part.

2. SAME—ESTOPPEL—RECEIPT IN FULL.

Where contractors with the government, after the completion of their work, have received the balance due them according to the accounts of the engineer in charge, and have given a receipt in full without protest or objection, such receipt precludes them from a further recovery in a suit against the government under the act of March 3, 1887.

W. E. Craig, for plaintiffs.
A. J. Montague, U. S. Atty.

PAUL, District Judge. This is a petition filed by the plaintiffs against the United States under the provisions of the act of congress passed March 3, 1887, entitled "An act to provide for the bringing of suits against the government of the United States" (24 Stat. 505). The petitioners claim that the government owes them the sum of $7,846.61, as an unpaid balance on a contract made on the 29th day of December, 1890, between the United States and the petitioners for the construction of a road from the city of Staunton, Va., to the National Cemetery, near that city. The contract made for said road was authorized by an act of congress passed April 9, 1890, appropriating $11,000 for that purpose.

The petition alleges:

"That, as provided in their said contract, they entered upon the building of the said roadway according to the plans and specifications set forth in the contract, they furnishing the material, labor, and all other things necessary for the carrying out of their said contract; that the United States furnished a

superintendent to supervise the work, and to see that it was done according to contract; that this superintendent dealt so harshly and unjustly with your petitioners, depriving them by his reports of compensation for work which they did according to contract, and refusing to recommend for them compensation for extra work done, and for work done in a different way from that specified in the contract, so that before the completion of the work it broke up your petitioners financially, and they were compelled to abandon the work, and let other contractors finish it, much to their damage and injury."

The petition makes an exhibit of the statement of settlement made by the war department of the work done, and prices of the same. The petition further alleges that:

"This statement of settlement did very gross injustice to your petitioners, depriving them of nearly one-half of what was justly due them. The following is a statement of the account which should have been rendered, and by which they should have had a settlement for this work. This statement shows that the superintendent in charge of the work on the part of the United States did not properly classify the work done, he classifying hard-pan excavation as earth excavation, not allowing sufficient solid-rock and loose-rock excavation; not allowing for the construction of valley guttering when the contract called for lateral guttering; not allowing for curbing at all; not allowing sufficient macadam for foundation, both from material obtained in excavation of the road and for material brought from the outside; and for other errors, misstatements, and disallowances as shown by this statement of the account."

Then follows a statement of the account between the parties as the petitioners claim it should be.

Upon the evidence the court finds the following facts:    (1) That the petitioners, William W. Newman and D. Newton Wilson, citizens of Augusta county, Virginia, as partners under the firm name of Newman & Wilson, on the 29th day of December, 1890, entered into a contract with the United States for the construction of a roadway leading from the city of Staunton, Virginia, to the National Cemetery, near that city.    (2) That preliminary to the signing of said contract by the parties thereto, G. B. Dandy, deputy quartermaster general, U. S. army, advertised for proposals for the said roadway.    (3) That the curbing mentioned in the advertisement for proposals for the construction of the roadway, and in the proposal of the claimants, is not embraced in the contract, and that the curbing was done independently of the contract; that the price of the curbing was fifteen cents per lineal foot; and that the same was included in the engineer's report of solid rock removed, and paid for in the amount allowed the claimants for solid rock in the final statement made by the war department.    (4) That the gutter called for in the contract was a lateral gutter, and that the one constructed by claimants is what is known as a valley gutter; that the latter was adopted and constructed with the tacit, if not expressed, consent of the claimants; that there was no agreement between the engineer in charge of the work and the claimants that the price to be paid for this kind of gutter was to be other than that named in the agreement for the lateral gutter; that no authority was given by the United States to the engineer to make any other contract for the gutter than that stated in the contract, nor did the United States sanction any other; that the guttering was reported by the engineer in his final estimate at the price named in the agreement, and the same was paid to the claimants without objection on their part.    (5) That the item in the claimants' demand

designated "100 cubic yards water excavation in culvert at $1.00 per yard" was embraced in the contract in the work to be done designated under the head of "Culvert"; that the same was included in the engineer's final estimate and report, and has been paid for. (6) That the item in claimants' demand designated "Regrading hill west of cemetery, $100," is embraced in the contract under the head of "Grading," as stated in the specifications; that it was included in the final estimate and report of the engineer, and the same has been paid for. (7) That the engineer in charge and supervising the work, as provided in the contract, was W. L. Whitmore; that it is not alleged in the petition, nor shown by the evidence, that there was any fraud or gross mistake on his part, such as would imply bad faith toward the claimants in the discharge of his duties in making measurements and classifications of the material excavated, nor that there was any failure on his part to exercise an honest judgment in the discharge of his duties. (8) That on October 31, 1890, W. L. Whitmore, the engineer in charge of the construction of the roadway, made his report to the war department that the roadway was completed, accompanying said report with a statement of the work done and the amount due thereon to the claimants, Newman & Wilson; that the amount was paid to Newman & Wilson and receipted for in full.

The following are the report and receipt, which are made part of this finding:

"Staunton, Va., National Cemetery, Staunton, Va., October 31st, 1890.

"I hereby certify that I have this day inspected the work performed and material furnished by Newman & Wilson, contractors, on the construction of roadway at the Staunton, Va., National Cemetery, as per statement attached. I further certify that the work done and material used are satisfactory, and in accordance with the requirements of the contract, and I estimate that there is due therefor to the said Newman & Wilson, contractors, the sum of nine thousand three hundred and sixty-nine and $52/100$ dollars, less previous payments, work completed and accepted.

"William L. Whitmore, Civil Engineer & Inspector, Q. M. Dept."

"I certify that the above account is correct and just; that the services were rendered as stated; that they were necessary for the public service, and are borne on my report of persons, etc., for the month of October, 1891.

"G. B. Dandy, Deputy Qr. Mr. General, U. S. Army."

"Received at Washington, D. C., the 9th day of November, 1891, of Lieut. Col. Geo. H. Weeks, deputy quartermaster general, United States army, the sum of twenty-four hundred and thirty-five (2,435) dollars and fifty-seven (57) cents, in full of the above account.

"[Signed in duplicate]                         Newman & Wilson."

".Depot Quartermaster General's Office,

"Washington, D. C., November 9th, 1891.

"Newman & Wilson, Box 381, Staunton, Va.—Gentlemen: Inclosed herewith please find check No. 280,616 on the assistant treasurer U. S., New York, N. Y., payable to your order, for the sum of $2,435.57, in payment of your account for construction of roadway to National Cemetery, Staunton, Va., final payment. Please date and sign the receipt at the foot of this letter and return the same to this office at your earliest convenience.

"Very respectfully, your obedient servant,

"6,043. D. Q. M. O. 1891.          Geo. H. Weeks, Depot Quartermaster."

"Nov. 11th, 1891.

"Received this day the check above mentioned.          Newman & Wilson."

## Conclusions of Law.

From the foregoing findings of fact the court ascertains as conclusions of law:

1. That the plaintiffs are conclusively bound by the estimates made by the engineer, Whitmore. The petition does not charge, nor does the evidence show, any fraud or such gross mistake as would imply bad faith or failure by the engineer to exercise an honest judgment in the duties which the government and the plaintiffs in their contract agreed he should perform. The proposal for the contract, which is made part of the contract, provides:

"The work will be under the charge of a civil engineer or other agent of the United States, to be designated by the contracting officer. All materials and work will be subject to his inspection, and must be approved by him. All cases where classification is doubtful will be decided by the engineer in charge. All materials will be measured in excavation alone."

### The contract for the work provides:

"Art. 3. That all work done and material furnished under this contract shall be under the direction of, and subject to inspection and rejection or acceptance by, the party of the first part, or by an engineer or other agent of the United States, to be designated by him, and all materials shall be thus inspected and accepted before being used in the work."

### Article 4 of the contract provides:

"That the contractor shall keep such a force of men and teams and such supply of materials on the work as, in the judgment of the engineer in charge, will insure the completion of the work within the time allowed in the contract."

### Article 6 of the contract provides:

"It is further provided that partial payments on the work performed and materials furnished under the contract may, in the discretion of the party of the first part, be made from time to time, on the certificate of the engineer or agent in charge, as the work progresses satisfactorily, provided that on all such payments twenty per centum of the estimated value of such work and materials shall be withheld until completion of the entire work as required, and acceptance of the same by the contracting officer, or by the engineer or agent specially designated by him to make the final inspection thereof."

By these provisions in the contract the plaintiffs agreed that the engineer in charge should determine the classification of the excavations, the grading of the ground, the depth and foundation of the culvert, and that he should have general supervision of the whole work, with power to accept or reject any portion or all of it according to his honest judgment.

All the materials were measured in excavation as required by the contract, and there is no evidence offered by the plaintiffs to show that these measurements were not accurately made by the engineer. His estimates of the excavations and their classification are based on actual measurements, made at the time the excavations were made, and the material removed. The plaintiffs endeavor to show by the testimony of expert civil engineers that this is not the proper and usual method of measuring and classifying excavations; that the proper method in making classifications is to take the total amount of yards excavated on the whole work, and estimate by percentage,

as nearly as may be, what proportion each classification should be given. It is on this method of measurement that the plaintiffs base their estimates filed with their petition, and for which they claim extra compensation. The estimates and classifications made by the engineer in charge were made from actual measurements, and not by percentages. He testifies that he has been engaged in civil engineering for 15 years on government, city, county, and railroad work, and that this is the method where measurements are made in excavations. The different methods of measurement—that of the engineer in charge of the work and of the civil engineers who testify in behalf of the plaintiffs—leave the testimony conflicting as to the quantity of each of the several classifications of the material moved. Any question raised by this conflict of testimony is settled by the terms of the contract under which the plaintiffs undertook to perform the work. By the terms of the contract the work was to be under the charge of an engineer or other officer designated by the government, and all materials and work were subject to his inspection, and to his acceptance or rejection. All materials were to be measured in excavation, and all cases where classification should be doubtful were to be decided by the engineer in charge. These contractors, in view of their stipulations with the government, are conclusively bound by the estimates of the engineer, and cannot recover beyond what he has allowed them, in the absence of fraud or of such gross error or mistake in judgment as would imply bad faith on the part of the engineer. Kihlberg v. U. S., 97 U. S. 398; Railroad Co. v. Price, 138 U. S. 185, 11 Sup. Ct. 290; Railway Co. v. Gordon, 151 U. S. 285, 14 Sup. Ct. 343; Railroad Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035; Ogden v. U. S., 9 C. C. A. 251, 60 Fed. 725; Mundy v. Railroad Co., 14 C. C. A. 583, 67 Fed. 633; Condon v. Railroad Co., 14 Grat. 302.

2. The court ascertains as a conclusion of law that by the terms of the receipt executed by the plaintiffs to the government on the 9th day of November, 1891, they are precluded from a recovery in this suit. That receipt was given after the completion of the work and its acceptance by the government on account rendered the contractors for a balance due them of $2,435.57. This amount was received by the plaintiffs, and a receipt given in full of the account. They received the money without protest or objection, and without any claim or intimation that the same was not as much as was due them, or not in full satisfaction and payment of the amount due them as expressed in the receipt. Nor were any steps taken by the plaintiffs calling in question the correctness of the settlement until the commencement of this suit, two years after the receipt was given.

In De Arnaud v. U. S., 151 U. S. 483, 14 Sup. Ct. 374, where a receipt had been given, as in this case, in full of the account, the supreme court said:

"In the absence of allegation and evidence that this receipt was given in ignorance of its purport, or in circumstances constituting duress, it must be regarded as an acquittance in bar of any further demand."

It is not alleged in the petition, nor is there any evidence, that the plaintiffs gave the receipt in full to the government in ignorance of

its purport, or under constraint of any kind. The evidence shows no just foundation for this claim against the government, and it must be disallowed. The petition of the claimants will be dismissed, with costs.