McNAMARA et al. v. HOME LAND & CATTLE CO. et al.

(Circuit Court, D. Montana. December 10, 1900.)

1. REFERENCE—EXCEPTIONS TO FINDINGS OF REFEREE.

Where a cause is, by consent of parties, referred to a master to hear the testimony, and report findings of fact and conclusions of law thereon, exceptions to any part of his report should be submitted in the first instance to the master for his consideration and action, and the court will not consider exceptions taken for the first time after the master has filed his report, and which involve a review of all the evidence taken.

**2. SPECIFIC PERFORMANCE—CONTRACT FOR SALE OF STOCK—BREACH.**

Defendant contracted to sell and deliver to complainants its herd of cattle in Montana at a uniform price per head. The contract stipulated that 9,000 head should be of a certain class and age, and that for any shortage in that number not delivered before a fixed date defendant should pay complainants $20 per head. A few days before the expiration of such time defendant was making a delivery under the contract, and after delivering a part of the number on hand demanded payment therefor before making further delivery. Complainants refused to make such payment, except on allowance of the $20 per head for the shortage under the 9,000 delivery, and defendant thereupon refused to make any further delivery. At that time defendant had delivered less than 7,200 head of the 9,000, and did not have the cattle to complete the delivery of the 9,000, nor intend to do so, which fact was known to complainants. Defendant had also assigned the money to be received under the contract to a bank in Missouri, and immediately upon payment such money passed out of its possession or control. *Held* that, under such circumstances, complainants were justified in their action, and were not guilty of a breach of the contract which precluded them from enforcing specific performance as to the stock remaining undelivered.

**3. SAME—JURISDICTION OF EQUITY—ADEQUATE REMEDY AT LAW.**

A Missouri corporation, doing business in the state of Montana, which has not sufficient assets in that state with which to respond in damages for the breach of a contract for the sale of personal property, may be treated as insolvent in that state, for the purpose of holding that an action at law for breach of the contract is an inadequate remedy, and of supporting a suit in equity for a specific performance of the contract, as the complainant should not be compelled to resort to a foreign jurisdiction to collect any judgment he might recover.

In Equity. Suit for specific performance of a contract for the sale of stock.

H. G. McIntire and Wm. Wallace, Jr., for plaintiffs.

Cullen, Day & Cullen, J. W. Strevell, and F. C. Sharp, for defendants.

KNOWLES, District Judge. This suit was originally brought by the plaintiffs against the defendants in the district court of the Tenth judicial district of the state of Montana, in and for the county of Valley, and by a proper petition and proceedings was removed by the defendants into this court. The Home Land & Cattle Company is a corporation organized under the laws of the state of Missouri. The case was brought to compel the specific performance of a contract for the sale and delivery of certain personal property, described in the bill herein, and situated within the state of Montana. The issues having been framed and joined, the case was, upon the request and with the consent of all the parties, referred by the court to Hon. Henry N. Blake, as a master, to hear the testimony and proofs of the respective parties, and report the same to the court, together with his findings of fact and conclusions of law thereon, according to the rules and practice of this court in such cases made and provided. Thereafter the master heard the testimony and proofs of the parties, and reported the same to this court, together with his findings of fact and conclusions of law thereon. The complainants, upon the coming in of the master's report, filed certain exceptions to the same as to the insufficiency thereof with regard

to all the facts found; the complainants contending that the master had not found all the facts upon all of the evidence adduced before him. Seven exceptions were specifically made and taken by the complainants, who also moved that the cause be again referred to the master, with directions to make additional findings. The defendants also made and filed certain exceptions to the findings of fact reported by the master, said exceptions being eight in number. The defendants also excepted to the conclusions of law drawn by the master from the facts found. These exceptions on the part of both parties were not presented to the master for his consideration, but were filed in this court in the first instance, and after the coming in of the master's report. The consideration of these exceptions by the court would require it to review all of the evidence in the case, and determine whether the findings of the master were justified and supported by it.

The cause was, by consent of all the parties, referred to the Honorable Henry N. Blake, as a master, not only to hear the testimony, but to make findings of fact and conclusions of law thereon. The plain and manifest object of the reference so made was to lighten the labors of the court, and avoid rehearing the whole case upon the evidence. The exceptions of the parties to the report, or any part thereof, should have been first submitted to the master for his consideration and action, so that he might know in what particular his report was objectionable, and to enable him to correct his errors and reconsider his opinion. I think this matter of the consideration of these exceptions by the court in the first instance comes fully and fairly within the rule and the principles laid down in the following cases: Story v. Livingston, 13 Pet. 359, 10 L. Ed. 200; Kimberly v. Arms, 129 U. S. 524, 9 Sup. Ct. 355, 32 L. Ed. 764; Railroad Co. v. Gordon, 151 U. S. 290, 14 Sup. Ct. 343, 38 L. Ed. 164; Manufacturing Co. v. Camp, 15 C. C. A. 226, 68 Fed. 68; and a large number of other cases cited therein.

If the practice as thus established were different, or as counsel for defendant insist that it should be, then there would and could be nothing gained by a reference of an equity cause to a master, and that useful and efficient adjunct and officer of the courts of equity would be functus officio. The exceptions of all the parties are overruled, and the master's report is confirmed.

The court being bound by these findings of the master, the question is presented as to whether, considering the merits of the case, the complainants are entitled to a decree of specific performance. The merits of the cause have been sufficiently and extensively argued by the respective counsel for the parties herein, and the court feels called upon to determine the same. From the findings of the master, it fully appears that the defendant the Home Land & Cattle Company, a Missouri corporation, contracted to sell and deliver to the complainants its herd of cattle in Montana, estimated to be 30,000 head, more or less, for the agreed price of $25 per head. As part of the contract it was stipulated that 9,000 head of 3 year old steers and spayed cows of 4 years old and upwards should be delivered to the complainants as a part of this herd, and should the de-

fendant the Home Land & Cattle Company fail to deliver to complainants this number of steers and spayed heifers by November 1, 1897, said defendant should pay to complainants $20 per head for all such as should fall below said number of 9,000. This contract is made a part of the report, and is marked "Exhibit A." The master finds, among his conclusions of law, that the paragraph marked "9th," of the terms and conditions of said contract (Exhibit A), is a material part thereof, and that complainants relied upon the guaranty and agreement therein contained. This conclusion seems to be justified from an inspection of the contract and the findings of fact made by the master. The master also finds that the complainants depended upon the deliveries of the cattle mentioned in said contract (Exhibit A) to furnish cattle under beef contracts to the government Indian reservations. The master further found as follows:

"That the complainants have received under said contract (Exhibit A), from the defendant the Home Land & Cattle Company, 7,135 steers of the age of 3 years and up, and spayed heifers of the ages of 4 years and up, of the 9,000 steers and heifers specified in the ninth clause of the terms and conditions of the said contract (Exhibit A), and that 1,865 of said steers and heifers have not been delivered to the complainants under said contract by said defendants or either of them." See finding No. 9.

The master also found:

"That upon the 18th day of October, 1897, the Home Land & Cattle Company notified the complainants, by a telegram, that it would deliver to them upon the 21st instant (October), at Oswego, in the state of Montana, 820 steers, 631 stock cattle, and 500 head of horses (see Exhibit C), and that the defendant the Home Land & Cattle Company, upon the 21st and 22d days of October, 1897, delivered to the complainants 933 head, consisting of 820 steers and some stock cattle, to the value of the sum of $23,325.00; that the defendant the Home Land & Cattle Company was then prepared to deliver to the complainants, under said contract (Exhibit A), 457 head of stock cattle, and 500 head of horses, but refused to deliver the same or any part thereof unless the complainants first delivered to said defendants a draft for said sum of $23,325.00 in payment for said 933 head; that the complainants then refused to deliver to the defendants, or either of them, a draft for said sum, or any other sum, but offered to pay for said cattle and horses upon their delivery, provided that said defendants, or either of them, would pay to the complainants the amount due for the shortage in the number of said steers and spayed heifers, of $20.00 per head: that the complainants then presented to the defendants a statement of the accounts between the parties, including said claim for shortage, and tendered the defendants the sum of $9,675.00 in full payment of said 933 head, and said 457 head of stock cattle, and said 500 horses and 113 strays, to wit:

| | |
|---|---:|
| 933 head, at $25.00 | $23,325 00 |
| 457 head, at $25.00 | 11,425 00 |
| 113 head of strays, at $25.00 | 2,825 00 |
| 500 head of horses, at $20.00 | 10,000 00 |
| | $47,575 00 |
| Shortage, 1,895 head, at $20.00 | 37,900 00 |
| Balance due defendants | $ 9,675 00 |

"And the said defendants refused to accept said tender of the sum of $9,675.00, or settle said claims of the complainants on account of the shortage, and refused to deliver to the complainants the said horses, or said herd of said 457 head of stock cattle. That the defendant the Home Land & Cattle Company finished its round-up for the season of 1897 upon the 22d day of October,

1897, and had not made any preparation for, and did not intend to make any further deliveries under, the said contract (Exhibit A), on or before the first day of November, 1897. That the defendant the Home Land & Cattle. Company did not have upon its range in said state of Montana, on the 22d day of October, 1897, any number exceeding 300 head of said steers, of the ages of three years and up, and spayed heifers of the ages of four years and up, and that the plaintiffs then knew that the defendant the Home Land & Cattle Company could not deliver said 9,000 head of steers and heifers specified in said contract (Exhibit A), and claimed that the shortage therein would be 1,895 head."

It is claimed by the defendants that because of complainants' refusal to pay the said sum of $23,235 for cattle delivered that complainants committed a breach of the contract in regard to the sale and delivery of said property, and defendant the Home Land & Cattle Company was not required to deliver said 457 head of said stock cattle, and the 500 head of horses, under the terms thereof. It appears, however, that the defendant had not the ability and did not intend to comply with that contract itself, and deliver the full amount of 9,000 head of steers 3 years old and up, and spayed heifers 4 years old and up; that it had completed its round-up and gathering of cattle for that season, and that it did not have the 1,865 head of that class of cattle, nor more than 232 head of the same, and that this was known to the complainants on the 22d day of October, 1897; that said defendant the Home Land & Cattle Company would not comply with its contract, and make good the above shortage. Under these circumstances, were the complainants required to pay this sum of $23,235 before they could demand the delivery of said 457 head of stock cattle and the 500 head of horses which the defendant the Home Land & Cattle Company had in its possession and was prepared to deliver?

It appears from the findings of the master that, outside of this 457 head of stock cattle and 500 head of horses, the aforesaid defendant had, upon the range in Montana, 433 head of cattle classified as follows: 232 steers, 165 cows, 42 bulls, and 4 heifers; the 67 calves mentioned in the findings being for the most part calves of 1897. It further appears from the findings of the master that all money to be paid on these cattle had been assigned to the defendant the National Bank of Commerce of St. Louis, Mo., and that the same would pass out of the control of the defendant the Home Land & Cattle Company as soon as paid. This contract was not what is termed a "severable contract." It was not specified how many cattle were to be delivered at any one time, other than in train-load lots. It was contemplated that all of the steers and spayed heifers should be delivered by the 1st day of November, 1897. The case of Cherry Val. Iron Works v. Florence Iron River Co., 12 C. C. A. 306, 64 Fed. 575, and the cases cited therein, fully support the doctrine that the contract under consideration here is not a severable contract. The defendant the Home Land & Cattle Company did not demand a rescission of the contract on the ground or account of the failure to pay this money, and it is difficult to see how it could well have been rescinded under the circumstances presented. This was a large transaction. Complainants had received some 16,-

000 head of cattle, and paid therefor to the defendants $400,000. I do not think, under these circumstances, that the complainants were required, as a matter of law or equity, to pay over this sum of $23,235 before asking for the delivery of the stock cattle mentioned in the bill. It should be noted that the Home Land & Cattle Company really had no right to demand the payment of the money. The money had been assigned to the National Bank of Commerce. The National Bank of Commerce had no right to the cattle the delivery of which was withheld. It was not proper, therefore, for the cattle company to demand this payment of money to another when it did not intend and had not the ability to comply with its contract, when the result of this payment would render the complainants unable to recover in this jurisdiction the compensation provided for in the contract for the failure to deliver the full number of 9,000 head of steers and spayed heifers.

It is evident that this construction of the contract contended for on the part of the said cattle company would force the complainants to seek redress for said cattle company's breach of this contract in the state of Missouri, and that the complainants could not have done so with any assurance of obtaining complete redress in Montana. It is an important consideration in this case as to whether sufficient equities have been presented to justify this court in awarding specific performance of this contract. The master has found that the cattle company is solvent. He has found, however, that the property of said company chiefly consists of an indebtedness due it from the St. Louis Stamping Company, a Missouri corporation, and doing business in that state. What the nature of this indebtedness is, and how it is evidenced, does not appear. When such indebtedness becomes due is also a matter not in evidence, or determined by the findings of the master. A party should not, under the circumstances presented by this case, be compelled to seek a foreign jurisdiction to collect damages for the breach of a contract when he has in his own hands the means of remunerating himself therefor. Johnson v. Brooks, 93 N. Y. 343. In the case of Clark v. Flint, 33 Am. Dec. 733, it is held that, where the remedy at law would be against a person actually insolvent, such legal remedy would not be adequate, and would be a ground for equitable jurisdiction. In 22 Am. & Eng. Enc. Law, p. 992, it is stated that the insolvency of a defendant is a ground for equitable relief, where the specific performance of a contract for the sale of chattels is presented. As far as the defendant the Home Land & Cattle Company is concerned, I think it may be treated as if insolvent in Montana. It had not the means wherewith to liquidate complainants' claims on account of the deficiency of the cattle above mentioned, if complainants paid to the defendant bank the amount due for the last delivery of cattle made to them. The cattle gathered by the defendant the Home Land & Cattle Company in the year 1898 were upon the range, and scattered, and it would seem unjust to require a creditor to hunt them up in order to render them subject to his demand.

With this view of the law and the facts presented in this case, I have reached the conclusion that sufficient equities are presented to entitle complainants to the relief prayed for in their bill. It is therefore ordered that complainants have a decree for the specific performance of this contract as to the cattle and horses described in the bill.