**DUPLEX ENVELOPE CO., Inc., v. DENOMI-NATIONAL ENVELOPE CO. et al.**

No. 3851.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1935.

Theodore S. Kenyon, of New York City (Kenyon & Kenyon and Lewis O. Hutchinson, all of New York City, on the brief), for appellant.

G. Mallet Prevost, of Washington, D. C. (R. E. Cabell and Geo. Lewis Chumbley, both of Richmond, Va., and Prevost & Prevost, George A. Prevost, and Arthur P. Cyr, all of Washington, D. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

This suit in equity was brought for infringement of letters patent to Jones and Shomaker, No. 1,855,132 and No. 1,792,642,

issued to the plaintiff in the District Court as assignee on April 19, 1932, and February 17, 1931, respectively. The patents relate to automatic devices to be used in the printing of church envelopes, the patent first mentioned disclosing a device for feeding the envelopes in series to a printing press, and the second disclosing devices for printing numbers and dates on the envelopes of each set to distinguish them from the envelopes of all other sets. These devices are designed to be used on printing presses of the sort described in the opinion of this court in the companion case [Denominational Envelope Co. et al. v. Duplex Envelope Co., Inc. (C.C.A.) 80 F. (2d) 186], filed this day.

Duplex Envelope Company, for more than thirty years past, has been engaged in the business of printing church collection envelopes. Formerly the envelopes were printed on the flap side only, but the president of the company conceived the idea of using the other side to carry a pastoral or seasonal message and put the idea in effect commercially in 1927. The envelopes were first printed on Harris presses equipped with the Jones and Nielson suction feed, described in the companion case [Denominational Envelope Co. et al. v. Duplex Envelope Co., Inc. (C.C.A.) 80 F. (2d) 186], which were referred to in the pending case as the "single machines." In the present commercial practice, the envelopes are printed in series, one for each Sunday or special occasion in the year. All in a series carry the same serial number, but each a different date and message. At first no effort was made to place the same message on the envelopes of all contributors on the same date, but a demand for uniformity arose and the problem of mechanical colation led to patent No. 1,855,132 now under discussion.

The patent comprises a series of magazines for holding the envelopes, carried on two endless chains, to which the magazines are removably attached. The machines are carried by sprockets mounted on vertical shafts, two of which are fixed, the sprockets being rotatable thereon, while the third shaft is itself rotatable and the sprocket is rigidly fixed thereon. The last-mentioned shaft is driven from a main shaft, so that the magazines are caused to travel in a continuous triangular or rectangular path. The mechanism is so arranged as to accommodate a greater or less number of magazines as may be required in a particular operation. This mechanism is referred to as the caterpillar. It is driven at a uniform rate of speed by the same shaft which controls the movement of the suction block, the feeding mechanism and the printing cylinder, so that the movement of all of them is synchronized.

The appellant concedes that the mechanism so described and its method of operation is correctly and ably presented in the report of the special master as follows:

"Assuming that a set or a series is to consist of 52 envelopes, one for each Sunday, 52 magazines would be attached to the chains which would be adjusted to exactly accommodate that number. In the first magazine would be placed envelopes, previously printed on the plain sides with the message designed for the first Sunday in January, in the next adjacent magazine the message envelopes for the second Sunday, etc.

"As the 'caterpillar' is continuously moved around its orbit, the envelopes are successively removed from the bottoms of the magazine by a suction-feed device similar to that described in the Jones and Nielson patent, transferred to the feeding mechanism by which they are carried into the press, which prints the flapside of the envelope, numbers fifty-two envelopes with the same serial number, and dates the series with the successive dates of the Sundays throughout the year. Upon completion of this cycle, the serial number is automatically changed and the process is repeated. In this manner the envelopes are turned out in complete sets, the message for each date being the same on all envelopes of that date.

"The suction-block, valve, press-throw-off, suction-cut-off, and a portion of the feed mechanism in the caterpillar machine are the same as that used in the Jones and Nielson 'single machine' but the fact that in the caterpillar machine the envelope must be removed by the sucker-block from a moving hopper rather than the stationary hopper found in the single machine, requires that instead of moving only in a more or less vertical plane as in the single machine, the suction-block in the caterpillar machine, at the time of contact with the envelopes should itself be moving in approximately the same direction as the magazines and at the same speed; otherwise, the envelope would not be withdrawn cleanly with a straight downward pull."

The mechanism whereby the required combination of the vertical and horizontal movement of the suction block is secured is so arranged that "as the suction-block approaches its contact point with the envelopes in the moving magazines, it is rising and at the same time traveling in the same direction with the magazines; at the moment of contact its movement is practically coincident with that of the magazines and the downward withdrawing movement is also accompanied by a horizontal movement in the direction of the line of movement of the magazines." The movement of the suction block is thus given both a vertical and horizontal component which causes it to move in an elliptical path.

The master found and the District Judge approved the finding that the claims of this patent were valid and that all of them except claim 6 were infringed by Denominational Envelope Company, Inc., and Wesley P. Shomaker, but not by Union Envelope Company. No appeal was filed by the defendants, but the plaintiff appealed because of the holdings (1) that claim 6 was not infringed, and (2) that Union Envelope Company was not an infringer.

Claim 6 of the patent is as follows: "In combination, a plurality of tubular vertical magazines, an extractor for withdrawing an article from the bottom of a magazine, means for effecting vertical reciprocation of said extractor, and means for moving said magazines horizontally to bring the same successively into operative relationship to said extractor."

The District Court ruled that the language of the claim relating to "means for effecting vertical reciprocation of said extractor" excluded the type of extractor embodied in defendants' machine; and in our opinion, this holding was correct. The specification of the patent describes two forms of the device. In one, the chain of magazines is in continuous movement and the extractor which withdraws the envelopes from the magazines follows an elliptical course beneath the magazines as it extracts one envelope from each magazine as it passes. The other form of device described in the specification is used when it is desired to withdraw and print a number of envelopes successively from each magazine. When this occurs, the device employed periodically arrests the movement of the chain of magazines and causes the sucker block to move only in a vertical path beneath the magazine from which the envelopes are withdrawn. With regard to the latter movement, the specification of the patent states: "Under the conditions above described, lateral reciprocation of the block (suction-block) is prevented, and this movement is limited to vertical reciprocation. * * *" Thus, the specification clearly defines what is meant by vertical reciprocation, and as it is conceded that the defendant has no device on its machine to accomplish this purpose, infringement of the claim is not made out. The plaintiff's contention is that claim 6 is broad enough to include both the elliptical or oval path of rotation of the suction block in the first movement above described, and also the vertical path of the second movement; but other claims of the patent describe the first of said movements, and it seems clear that the patentees intended by claim 6 to describe only the second movement.

The plaintiff also complains of the ruling that the defendant, Union Envelope Company, was not an infringer of the patent in suit. This assignment of error applies not only to patent No. 1,855,132, but also to patent No. 1,792,642. The case against the Union Envelope Company is based upon the following facts: Donald E. Rheutan left the employ of the plaintiff company in 1926 to organize the defendant, Denominational Envelope Company, and has since been its president, directing its course in direct competition with the plaintiff in the business of printing church envelopes. The defendant, Shomaker, is the coinventor of both of the patents in suit. For six years he was an expert mechanic and machine designer of the plaintiff, working out intricate mechanical problems and joining with the president of the plaintiff company in inventing and assigning to the plaintiff the caterpillar machine, the subject-matter of patent No. 1,855,132, and the dating and numbering device, the subject of patent No. 1,792,642, presently to be discussed. When he left the employ of the plaintiff, he was engaged by Denominational Envelope Company and constructed the caterpillar machine and the dating and numbering cylinders used by it at the time that the present suit was instituted. All of these machines were built for Denominational Envelope Company in the shops of the Union Envelope Company, which was paid for the privilege. At that time Isaac Rheutan, the father of Donald, was secretary and treasurer of

Union Envelope Company and the majority stockholder of Denominational Envelope Company. Union Envelope Company is the manufacturer of the kind of envelopes which Denominational Envelope Company prints and sells in large quantities to churches.

The plaintiff contends that the necessary inference from these facts is that Isaac Rheutan conspired with his son Donald to employ Shomaker to reproduce the devices which he had designed and patented for the plaintiff; and that as part of the unlawful conspiracy, Isaac Rheutan, a responsible officer of the Union Envelope Company, arranged for the manufacture of the infringing machines in its shops. Thereby it is said that the Union Envelope Company was charged with knowledge of the conspiracy, and having permitted its shop to be used for the manufacture of the infringing machines, is itself guilty of infringement.

■ There seems to be no testimony to indicate that the Denominational Envelope Company bought its envelopes from the Union Envelope Company; but even if such were the case, infringement could not be based on that charge alone, for the sale of an article of commerce of ordinary use without relation to any apparatus does not make the manufacturer guilty of contributory infringement, if the buyer later makes use of the article in infringing apparatus. Individual Drinking Cup Co. v. Errett (C.C.A.) 297 F. 733. The master held that the facts disclosed were inadequate to establish liability on the part of the Union Envelope Company, since the latter was under no duty to supervise the work done by the Denominational Company in its shops and could not be held liable therefor, unless knowledge of the character of the work and the assent of the Union Envelope Company to its performance were established. He held that the record was devoid of testimony tending to establish such knowledge and consent.

■ We are in accord with this conclusion. It may fairly be inferred that Isaac Rheutan, who held the majority of the stock in the Denominational Company and was intimately associated with its managing officers, was aware of the character of the work which was done in the shops of the Union Envelope Company of which he was secretary and treasurer; and if the latter company is chargeable with the knowledge thus brought home to its officer, it also might be held liable as a contributory infringer. The general rule is that a corporation is affected with constructive knowledge regardless of its actual knowledge of all material facts of which an officer acquires knowledge while acting in the course of his employment and within the scope of his authority. Wright v. Barnard (D.C.) 248 F. 756. Under this rule, the Union Envelope Company would not be charged with knowledge acquired by Isaac Rheutan by reason of his interest in another corporation, such as the Denominational Envelope Company; although the opposite would be true if possessed of this knowledge and acting as secretary and treasurer of the Union Envelope Company, and with its authority, he entered into the arrangement by which the Denominational Envelope Company was allowed to make use of the former's factory in building the infringing machines. There is, however, no evidence in the record to show the manner in which the arrangement was made, or what officers or agents of the Union Envelope Company represented that corporation in the transaction. It is not sufficient to know that Isaac Rheutan was the secretary and treasurer of the corporation, unless it be further shown that as such, he made the contract with the infringing corporation for the use of the premises, and unless it appears that as secretary and treasurer, he had the authority to represent his company in the transaction. Neither the secretary nor the treasurer of a corporation has authority, by virtue of his office, to bind the corporation in a contract of this kind. Indian Refining Co. v. Buhrman (C.C.A.) 220 F. 426; Mexican Nat'l Coal, Timber & Iron Co. v. Frank (C.C.) 154 F. 217; Cook on Corporations (8th Ed.) vol. 4, § 717.

The second patent, No. 1,792,642, in suit relates to dating and numbering mechanisms for use in connection with rotary printing presses such as the Harris press referred to in these cases. It was intended to provide improved means for changing each of said mechanisms at predetermined intervals; so that in the printing of church envelopes, for example, each envelope in a series might receive the appropriate date, and the series number of each set might be changed upon completion of the set. According to the specification of the patent, the dating and numbering mechanisms are mounted on a rotating cylinder cooperating with an impression cylinder. The rotating cylinder is provided with two

shafts coaxial therewith, one of which is connected with the dating mechanism and the other with the numbering mechanism, so that angular movement of the shafts relative to the impression cylinder produces changes in the dating and numbering mechanisms. Means are provided for actuating the shafts at predetermined intervals of rotation, and thereby sets of envelopes bearing identifying dates and numbers may be automatically printed.

Application for the patent was made by M. O. Jones, the president of the plaintiff company, and Wesley P. Shomaker, under circumstances described by the special master as follows:

"In the autumn of 1925 the complainant was preparing to move into a new plant then under construction, and at that time Mr. Shomaker was an instructor in the John Marshall High School in Richmond. Lacking shop facilities, pending the completion of the new plant, the complainant about July, 1925, put Shomaker upon its payroll, and, according to Jones' testimony, being 'desirous of finding some way of numbering and dating envelopes without infringing the Pritchard patent,' he took him (Shomaker) to the Duplex plant, showed him the Pritchard mechanism, 'told him of numerous suggestions and ideas that Nielson and I had' and 'Shomaker looked at the thing and studied it at some length, and in what to my mind was a remarkably short time, he came in with a drawing practically to scale embodying in theory something approximately pretty close to this number and dating cylinder.' After moving into the new plant Jones went over with Mr. Shomaker this original drawing that he had made, or possibly some modification of it, and 'pointed out some of the suggestions that Nielson made and working from that basis, we got one of the cylinders in experimental use, as I recall it, in the summer of 1926.' Thereafter there were a number of refinements made in the machine and about the fall of 1928 the Pritchard cylinder was generally replaced by the new cylinder."

"From this brief summary, which is taken almost entirely from the testimony of complainant's president, the most striking deduction is that complainant has in this case been guilty of the very thing that it so severely condemns in the case of the other two patents here involved, viz., it has deliberately set out to make such changes and alterations in the Pritchard mechanism as would enable it to make use of the basic ideas and principles embodied in the prior invention without rendering it liable to a suit for infringement. That this is legitimate, none will deny, but that in view of such a confessed purpose, a court of equity should relax in the slightest any technical legal principles which are applicable to the case would be a perversion of equitable doctrines."

Claims 2, 7, 9, 11, and 12 of the patent are relied on by the complainant. The master found that claims 2, 7, and 9 of the patent are invalid by reason of the prior patent to Pritchard No. 1,113,483, and that claims 11 and 12 are not infringed by the defendants; and these findings were approved by the District Judge who decreed that as to this patent, the bill of complaint should be dismissed.

The plaintiff in the court below admitted that in some particulars the construction of the patent followed the Pritchard patent, but stressed two departures therefrom which in its opinion served to differentiate the patent in suit from the prior patent. It was pointed out in the first place that in the Pritchard patent the main operating shaft is a solid shaft, and the dating and numbering mechanisms are operated by offset shafts operatively connected with the main shaft, while in the patent in suit, the main shaft is a hollow cylinder and the dating and numbering shafts are placed coaxially within it. The other plain departure from the Pritchard patent consists in means to prevent excess movement of the printing mechanism, consisting of a simple device which it is not necessary to describe in detail. The master held that although these changes resulted in some advantage and added convenience, they were merely mechanical devices which did not rise to the dignity of an invention, and this conclusion the plaintiff does not attempt to refute in its brief or argument in this court.

The only argument advanced by the plaintiff as to claims 2, 7, and 9 is that the defendant Shomaker is estopped by his assignment of the patent to the plaintiff to deny its validity; and that the other defendants, Denominational Envelope Company and Union Envelope Company are subject to the same estoppel through their association and privity with Shomaker. The rule is well settled that the assignor of a patent is estopped to contest its validity against the assignee. Frick Co. v. Lind-

say (C.C.A.) 27 F.(2d) 59, 61. In the same case it was held that the partner of the assignor, engaged with him in carrying on the business alleged to infringe the patent in suit, was doing business in such association and privity with the assignor as to be subject to the same estoppel which bound him. Relying on the principles enunciated in this case, the plaintiff contends that not only was Shomaker estopped to contest the validity of the patent, but that the Denominational Envelope Company, which employed him to make the infringing machines after he had left the plaintiff's employ, and the Union Envelope Company, which put its plant at the infringers' disposal, were bound by the same estoppel.

This contention is not without force, but it was not raised by the plaintiff in the trial court, and it is therefore too late to raise it for the first time in this appeal. With reference to a similar situation, the following is said in Riverside Heights Orange Growers' Ass'n v. Stebler (C.C.A.) 240 F. 703, 704, 705:

"It is contended by the appellee that appellants' second and third assignments of error, attacking the judgment of the lower court approving the allowance by the master of damages in excess of nominal damages, and of profits upon the entire machines sold by the defendant Parker, complete with bins and distributing systems, instead of upon the patented grader only, are defective, in that they raise objections which were not presented to or considered by the lower court. Other than this, there is no answering argument made by appellee with respect to the questions discussed in appellants' brief under these assignments. It is a well-settled rule of law that:

"'Exceptions to reports of masters in chancery are in the nature of a special demurrer, and the party objecting must point out the error; otherwise, the part not excepted to will be taken as admitted.' Story v. Livingston, 13 Pet. 359, 366, 10 L.Ed. 200 (citing Wilkes v. Rogers, 6 Johns (N. Y.) 566). 'A party neglecting to bring in objections cannot afterwards except to the report.' Id: McMicken v. Perin, 18 How. 507, 510, 15 L.Ed. 504. 'Proper practice requires that objections to a master's report shall be taken in that (the trial) court, that any errors discovered therein may be rectified by the court itself, or by a reference to the master for a correction of his report, without putting parties to the delay and expense of an appeal to this court.' Topliff v. Topliff, 145 U.S. 156, 173, 12 S.Ct. 825, 832, 36 L.Ed. 658.

"See, also, Sheffield, etc., Railway Co. v. Gordon, 151 U.S. 285, 290, 14 S.Ct. 343, 38 L.Ed. 164. * * *

"There is nothing in the record to show that any of the points now urged by appellant under the second and third assignments were ever presented to or considered by the lower court, and this court will not review a master's report upon objections taken here for the first time."

See, also, Heidbrink v. McKesson (C.C.A.) 53 F.(2d) 321; Underwood Typewriter Co. v. E. C. Stearns & Co. (C.C.A.) 227 F. 74; Ottumwa Box Car Loader Co. v. Christy Box Car L. Co. (C.C.A.) 215 F. 362.

No good reason is offered to show why this rule should not be applied to the corporate defendants in this case; but it is contended that it should not be applied to the defendant Shomaker because he did not question the validity of the patent in his answer to the bill of complaint, but defended the suit on the ground of noninfringement. This statement is not completely accurate, for Shomaker did raise the point in his answer that the patentees were not entitled to the patent because the invention, if any there was, was not the joint invention of the patentees, but the sole invention of Shomaker himself. The master came to the conclusion that this position was sound, but preferred not to rest his decision upon it. Moreover, the point now advanced, that Shomaker is estopped because he did not question the validity of the patent in the trial court, is now made for the first time. We conclude that the findings of the District Court with reference to claims 2, 7, and 9 of the second patent in suit were correct.

With regard to claims 11 and 12 of the patent, the only point on which the defense of noninfringement is based may be shown by consideration of claim 11, which is as follows: "In a device of the character described, a cylinder, a movable printing mechanism mounted thereon, a shaft rotatably mounted in said cylinder, means connecting said shaft and printing mechanism whereby rotary movements of the former relative to the cylinder effects movements of the latter, means for effecting rotary movement of said shaft upon rotation of said cylinder, and means

for periodically preventing operation of said last named means."

It will be perceived that the claim calls for (a) a cylinder; (b) a movable printing mechanism mounted thereon; (c) a shaft rotatably mounted in said cylinder; (d) means connecting said shaft and printing mechanism whereby rotary movement of the former, relative to the cylinder effects movement of the latter; (e) means for effecting rotary movement of said shaft upon rotation of said cylinder; (f) and means for periodically preventing operation of said last-mentioned means.

It is conceded that the defendants' structure includes all of these elements except (f) and a comparison of its structure with that of the patent in suit with reference to this element is necessary. The patented device is a printing roll mounted on a cylinder or axle, which in turn is carried on bearings. The dating mechanism and a pair of numbering mechanisms are centrally disposed upon this cylinder. The dating mechanism moves circumferentially about the cylinder, step by step, with the rotations thereof, so that as each successive envelope passes the printing point, it is printed with a different date. This movement of the dating mechanism is effected through a shaft operatively connected with a second shaft that lies inside the cylinder. The outer end of the interior shaft is provided with a notched wheel which is moved one step on each rotation of the cylinder or axle.

The numbering devices are moved in relation to the same cylinder or axle as the dating mechanism. They are actuated by another train of mechanism which includes a shaft within the cylinder, to the right or inner end of which is affixed a pin or arm protruding through a slot in the cylinder. On the opposite outer end of this shaft is keyed an arm in which there is a notch, and when this notch is engaged by a pawl, the arm is pressed back and the shaft is rotated slightly and thereby the pin on the opposite end of the shaft through certain linkage advances the numbering machine one step.

It is necessary that the interior shaft with which the numbering devices are connected should remain motionless except at the predetermined intervals when a number is to be changed; that is, when the number has been printed upon one set of envelopes and another set is presented for the same purpose. The means by which

this is accomplished is the element described in the claim as "means periodically preventing operation of said last mentioned means."

The cylinder or axle has a gear fastened to that end of it within which lies the shaft which is connected with the numbering mechanisms. At the outer end of this shaft, as we have seen, is also keyed the notched arm adapted to be engaged by the pawl. This pawl is pivotedly carried at an end of the arm which is supported by the gear. A ratchet wheel is rotatably mounted at the same end of the shaft. Close to the gear is a roller supported by the frame of the press in a position to be engaged by the arm of the pawl in each rotation of the cylinder. When this happens, the ratchet moves one step forward, but this effects no change in the numbering mechanism until one of the teeth in the ratchet deeper than the rest comes opposite the pawl in the step by step rotation of the ratchet; and then the pawl engages the notch in the end of the arm keyed to the shaft, rotating it the required distance to move the numbering mechanism up one number. By providing the ratchet with the number of notches corresponding to the number of envelopes in the set, this arrangement results in printing upon each envelope the same number until a set is complete, and then moving the number up for the next succeeding set and so on.

In the defendants' machine, the general arrangement of the printing roll is identical with the patent; and the numbering mechanisms are actuated through a train of parts corresponding to those in the patent, including a pin or arm attached to one end of an interior shaft, with which the numbering mechanisms are connected. As in the patent, the outer end of the shaft is provided with a gear carrying an arm and a pawl arranged so that the arm is periodically actuated by the pawl as it comes in contact with the roller. This roller is held out of line with the pawl during the printing of each set of envelopes, and is not actuated until the printing of the set is completed. Then through the operation of a rod extrinsic to the cylinder, the roller is moved into line with the pawl, whereby the arm on the shaft is moved and the appropriate change in the number mechanism is accomplished.

There is no ratchet wheel in the defendants' structure; and the contention is made that whereas the ratchet in the patent

prevents the operation of the numbering mechanism, the plaintiff's device performs a positive function in moving the actuating means into operating position at the required interval. Thus it is said that the difference between these two schemes is this—"one gets in the way and prevents it, and the other is out of the way and is pushed into way to operate it at the right time."

It is nevertheless true that in the defendants' structure the numbering mechanism is prevented from operating until the end of the set is reached by keeping the pawl out of the path of the roller until the desired moment, and then sliding it in after the number mechanism has been changed. By this operation the shaft extrinsic to the cylinder is actuated to move the roller out of the path of the pawl, thus preventing the operation of the mechanism until the next cylinder is complete. This seems to us to constitute means for periodically preventing the operation of the shaft and to be at least the equivalent of the plaintiff's structure.

We therefore hesitate to base the dismissal of the bill of complaint, in so far as claims 11 and 12 of the patent are concerned, upon the ground of noninfringement, and it is not necessary to do so. The master reached the conclusion that the court would be justified on the evidence in holding that Jones was not a joint inventor with Shomaker as to this patent, and that the patent was invalid on that account. This conclusion was based upon facts derived from the testimony of Jones himself which disclosed that Shomaker worked out the first permanent design of the structure before he was in the plaintiff's employment. Jones stated that Shomaker started working at the idea and produced the design while he was still in the employ of the high school; and that the broad general idea was his. The nearest approach to a claim of definite contribution by Jones consists of a statement that he suggested the idea of some sort of stop on the dating cylinder to prevent overrunning when operated at high speeds, but even in this respect, he makes no claim that he gave the idea a practical embodiment. These facts justify dismissal of the bill of complaint insofar as patent No. 1,792,542 is concerned.

The decree of the District Court is affirmed.