GENERAL FIREPROOFING CO. v. L. WALLACE & SON. TITLE GUAR-
ANTY & SURETY CO. OF SCRANTON, PA., v. SAME. L. WAL-
LACE & SON v. GENERAL FIREPROOFING CO. et al. †

(Circuit Court of Appeals, Eighth Circuit. January 5, 1910.)

Nos. 3,006–3,008.

1. CONTRACTS (§ 346*)—ACTION FOR BREACH OF BUILDING CONTRACT—PLEAD-
ING.

A petition in an action on a building contract, which sets out the con-
tract and alleges a failure to comply therewith because of the use of de-
fective materials and improper workmanship, is sufficient to warrant a
recovery according to the legal effect of the contract, either on an ex-
press or implied warranty.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1748; Dec.
Dig. § 346.*]

2. CONTRACTS (§ 205*)—BUILDING CONTRACT—CONSTRUCTION—IMPLIED WAR-
RANTY.

Defendant, a company engaged in the work of fireproofing buildings,
contracted to furnish all materials and perform all the labor in connec-
tion with the work of fireproofing a large hotel building under construc-
tion, including concrete floors, stairways, fireproof partitions, etc., and
also to furnish the structural steel required for the building, which it
did not manufacture. Held, that an express warranty in the contract
that such steel should be sufficient to carry loads as specified by the ar-
chitects did not exclude an implied warranty that the contract for the
fireproofing work should be performed in a workmanlike manner, and
all materials used should be suitable to render the construction fit for
the purposes intended.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 878, 905; Dec.
Dig. § 205.*]

3. CONTRACTS (§ 290*)—ACTION FOR BREACH OF BUILDING CONTRACT—APPROV-
AL BY ARCHITECT—WAIVER.

Under a building contract providing that the work should be done in
accordance with the specifications and drawings of the architects and un-
der their supervision, that their decision as to the true construction of
the specifications and drawings should be final, and that they might con-
demn materials or work and cause the same to be removed, but also that
no certificate given by them or payment made thereon except the final
certificate or payment should be conclusive evidence of the performance
of the contract, or construed as an acceptance of defective work or im-
proper materials, where final certificate was not given nor final payment
made, the contractor was not relieved from liability on account of de-
fective work or improper materials because the architects did not con-
demn the same as the work progressed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1317; Dec.
Dig. § 290.*]

4. CONTRACTS (§ 287*)—ACTION FOR BREACH OF BUILDING CONTRACT—DEFENS-
ES—WAIVER.

In an action against a contractor for fireproofing a building to recover
damages for breach of contract and injury to the building alleged to have
been due to the use of improper materials, and the improper mixing of
the concrete of which the floors were made, by reason of which they ex-
panded and cracked the walls of the building, which breach of contract
was denied, the facts that the architects under whose supervision the
work was done permitted it to continue, and gave partial certificates on
which payments were made after the injury to the walls was known,
while pertinent evidence for defendant, did not operate as a conclusive

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied April 15, 1910.

walver by the owner of the right to recover damages when not made such by the contract, and where the cause and extent of the injury to the walls were not at the time apparent.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1330–1332; Dec. Dig. § 287.*]

**5. APPEAL AND ERROR (§ 171*)—REVIEW—ESTOPPEL TO ALLEGE ERROR—NATURE AND THEORY OF CAUSE.**

That a court permitted a building contractor to maintain a joint action against a subcontractor and the surety on its bond, and to recover therein damages on account of injury to the building by reason of alleged defective work done by the subcontractor, without proof that plaintiff's liability to the owner of the building for such injury had been adjudicated or its extent determined, is not ground for reversal of the judgment by an appellate court, where no objection on that ground was made in the trial court, but defendants acquiesced in the theory on which the action was brought, and at their request the question of plaintiff's liability to the owner of the building was submitted to the jury, and an affirmative finding thereon made a condition to recovery against the defendants.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1353–1355; Dec. Dig. § 171.*]

**6. COURTS (§ 352*)—FEDERAL COURTS—FOLLOWING PROCEDURE OF STATE COURTS—VERDICT—EFFECT OF SPECIAL VERDICT.**

Where, in an action in a federal court to recover from a building contractor for a breach of contract by alleged defective work, the jury under proper instructions as to the measure of damages returned a special verdict finding the amount of damages caused by the failure of defendant to perform its contract, a general verdict for plaintiff for such amount less the amount of a final payment which would have been due defendant under the contract if properly performed was consistent with the special verdict and proper, regardless of the technical rules of procedure governing the local courts of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 927; Dec. Dig. § 352.*

Conformity of practice in common-law actions to that of state court, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

In Error to the Circuit Court of the United States for the Northern District of Iowa.

Action by L. Wallace & Son against the General Fireproofing Company and the Title Guaranty & Surety Company of Scranton, Pa. Judgment for plaintiffs, and all parties bring error. Affirmed.

A. H. Sargent and Frank Hagerman (F. H. Atwood, on the briefs), for General Fireproofing Co. and Title Guaranty & Surety Co.

John N. Hughes and Frank F. Dawley, for L. Wallace & Son.

Before SANBORN and VAN DEVANTER, Circuit Judges, and POLLOCK, District Judge.

POLLOCK, District Judge. The above numbered and entitled cases arose out of one transaction, were argued and submitted on the same record, and will be considered together as one case. The facts necessary to a decision may be briefly summarized, as follows:

In the year 1904 the Cedar Rapids Hotel Company, desiring to erect in the city of Cedar Rapids, Iowa, a six-story hotel, now built and oc-

cupied by it and known as the "Montrose Hotel," entered into a contract with L. Wallace & Son, a firm of contractors and builders (hereinafter called "original contractor"), to furnish all materials and perform all labor required in building, erecting and finishing said hotel building complete, above the basement story, ready for occupancy and use by the hotel company as a hotel. This contract is the general form used by the American Institute of Architects and the National Association of Builders, and has attached thereto particular specifications and requirements for the doing of the work, furnishing the materials, for supervision of the work by the architects, the making of estimates and payments thereon, etc. On September 21, 1904, thereafter, the original contractor entered into a subcontract with the General Fireproofing Company (hereinafter called the "Fireproofing Company") to furnish all materials and perform all labor in connection with the work of fireproofing the hotel according to the expanded metal system of construction, the laying of walks, floors, roof, etc. In this contract the original contractor was designated for convenience as owner and the Fireproofing Company as contractor. This contract contains, among others, the following provisions:

"Article I. The contractor shall and will provide all the materials and perform all the work for the fireproofing of the Third Avenue Hotel, located at Cedar Rapids, Iowa, according to the expanded metal system of construction and consisting of the following:

"The erection of the concrete and expanded metal floors ready to receive wooden floor strips or the foundation for mosaic or other floors, and ready to plaster underneath, the roof ready for tar and gravel, the partitions of metal studding and lathing and a suspended ceiling under the roofs ready to plaster, a rough concrete sidewalk ready to receive the 3″ top, and the concrete stairs with smooth trowel finish.

"Contractor agrees to furnish and erect all necessary steel, including columns, beams, girders, wall lintels, plates, anchors and stair carriages, and guarantees the structural steel to carry loads shown and specified, and to furnish a bond to cover this part of the work as required by the specifications.

"Work to be executed as shown on drawings and described in specifications prepared by the Josselyn & Taylor Co., architects, in connection with the drawings submitted by the contractor, and which are a part of this contract.

"Art. II. It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of the said architects and that their decision as to the true construction and meaning of the drawings and specifications shall be final. ❊ ❊ ❊

"Art. IV. The contractor shall provide sufficient, safe and proper facilities at all times for the inspection of the work by the architects or their authorized representatives; shall, within twenty-four hours after receiving written notice from the architects to that effect, proceed to remove from the grounds or buildings all materials condemned by them, whether worked or unworked, and to take down all portions of the work which the architects shall by like written notice condemn as unsound or improper, or as in any way failing to conform to the drawings and specifications, and shall make good all work damaged or destroyed thereby. ❊ ❊ ❊

"Art. X. It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract except the final certificate or final payment, shall be conclusive evidence of the performance of this contract either wholly or in part and that no payment shall be construed to be an acceptance of defective work or improper materials."

In compliance with the specifications for the doing of the work which were prepared by the architects Josselyn & Taylor Company,

and which became a part of this contract by adoption under the provisions of article I, the Fireproofing Company procured the Title Guaranty & Trust Company of Scranton, Pa. (hereinafter called the "Guaranty Company"), to execute and deliver its bond to the original contractor for the faithful performance of its obligations, in terms, as follows, to wit:

"Know all men by these presents: That the General Fireproofing Company, a corporation organized under the laws of the state of Ohio (hereinafter called the principal) and the Title Guaranty & Trust Company of Scranton, Pa., a corporation created and existing under the laws of the commonwealth of Pennsylvania, and whose principal office is located in the city of Scranton, commonwealth of Pennsylvania (hereinafter called the surety), are held and firmly bound unto L. Wallace & Son, of Cedar Rapids, Iowa (hereinafter called the obligees), in the full and just sum of twenty-five thousand six hundred sixty dollars ($25,660.00) lawful money of the United States, to the payment of which sum, well and truly to be made the said principal binds itself, its successors and assigns jointly and severally firmly by these presents, signed, sealed and delivered this 30th day of September, A. D. 1904.

"Whereas, said principal has entered into a certain written contract with the obligees, dated September 21, 1904, wherein and whereby the said principal agrees to provide all the materials and perform all the work for the fireproofing of the Third Avenue Hotel, located at Cedar Rapids, Iowa, according to the expanded metal system of construction and consisting of the following:

"The erection of the concrete and expanded metal floors ready to receive wooden floor strips on the foundation for mosaic or other floors, and ready to plaster underneath, the floors ready for tar and gravel, the partitions of metal studding and lathing, and a suspended ceiling under the roofs ready to plaster, and rough concrete sidewalk ready to receive the 3" top, and the concrete stairs with smooth trowel finish.

"Contractor agrees to furnish and erect all necessary steel, including columns, beams, girders, wall lintels, plates, anchors, and stair carriages.

"Now, therefore, the condition of the foregoing obligation is such that if the said principal shall well and truly indemnify and save harmless the said obligees from any and all pecuniary loss resulting from the breach of any of the terms, covenants and conditions of said contract on the part of said principal to be performed, then this obligation shall be void; otherwise, to remain in full force and effect both in law and in equity.

"The said principal and the said surety hereby especially guarantee that the structural steel to be erected under said contract to carry loads as shown and specified.

"The surety to this bond is expressly exempt from liability for any damage resulting from any act of God, or public enemies, or mobs, or riots, or civil commotion, or by employés leaving the work being done under said contract on account of so-called 'strikes' or labor difficulties.

"In testimony whereof the said principal and the said surety have caused these presents to be executed by their proper officers the said day and year first above written."

Under the provisions of these contracts the construction of the building was begun and proceeded with by the contracting parties in convenient relation, the original contractor carrying up the brick walls, and the Fireproofing Company following with the laying of the concrete floors and other fireproofing work until the month of March, 1905, at a time when the fourth floor of the building had been laid and work was progressing on the fifth story when cracks were discovered in the outer walls of the building. These cracks first appeared on the Third street side of the building; later, on the Third avenue side. In some instances they were in perpendicular lines breaking through

the bricks; in other cases in diagonal lines running through the joints between the bricks and between the brick and stone work of the building. At first these breaks or lines of cleavage were noticeable on the outer side of the wall only, but gradually enlarged until they extended through the walls to the interior side. The concrete used by the Fireproofing Company in the building was what is known as cinder concrete. During the construction of the building, cold weather having intervened, two of the floors froze in setting, and the Fireproofing Company was compelled to and did take them out and relay the floors. There also arose a controversy between the original contractor and the Fireproofing Company as to whose duty it was, under the terms of the contract, to furnish the false jambs used in the construction of the interior metal fireproofing partitions. These jambs were ultimately furnished by the original contractor at a cost of $800. The roof of the building as constructed by the Fireproofing Company proved to be defective, sagged and had to be repaired. The walls of the building were finished, the floors laid, and the roof in place about April 1, 1905, and the work to be done by the Fireproofing Company under its contract, in so far as completed by that company at any time, was finished about the middle of the month of September, 1905, at which time it removed its men, materials, and implements employed in the doing of the work from the grounds. Payments were made to the Fireproofing Company on estimates of the architects from time to time, until of the contract price agreed to be paid that company there remained a balance of $7,264.13 unpaid. Thereafter, on the 9th day of September, 1906, the original contractor having failed, on account of defects claimed by the hotel company in the building as constructed, to secure a certificate from the architects in charge of construction of the completion of the building as required by the contract, and the hotel company at the time withholding from the original contractor the sum of $16,000 of the contract price, commenced this action jointly against the Fireproofing Company on its contract, and the Guaranty Company on its contract of guaranty, to recover the damages alleged to have been sustained to the building by reason of the failure of the Fireproofing Company to keep and perform its contract.

The damages laid in the amended petition on which the case went to trial comprise five items, as follows: (1) Expense of taking down and repairing walls, $3,000; (2) damages sustained by reason of faulty construction of roof, $8,000; (3) damages sustained by reason of defects in construction of floors, $2,800; (4) amount expended in furnishing false jambs required in constructing interior metal partitions, $800; (5) total damages sustained to building by reason of the Fireproofing Company having failed to comply with its contract, $45,000. As to these claims for damages the court withdrew from the consideration of the jury all consideration of the third demand for damages on account of faulty construction of the floors. The architects in charge of the work decided under a true construction of the contract and specifications the duty of furnishing the false jambs for which the fourth demand was made rested with the Fireproofing Company. There seems to be no controversy over the correctness of this decision, as the contract between the parties made the decision of the architects

as to the true construction of the plans and specifications final and conclusive.

The theory on which the original contractor as plaintiff bottomed its case was that the cinder concrete employed by the Fireproofing Company was composed of defective materials on account of having therein deleterious substances, and on account of defective workmanship in its preparation or mixing which caused it to expand, and this expansion of the concrete used in the floors caused the walls of the building to be pushed outward, cracking, damaging, and weakening them, and the concrete itself to disintegrate, from which the roof became weak and sagged in such manner as to render it unsuitable and unfit for the purpose for which it was designed.

While defendants in the court below took certain exceptions, as shown by the record, to the sufficiency of statement of plaintiff's cause of action against them by way of motions to make definite and certain, yet the record fails to disclose any proper objection in the trial court to the right of the plaintiff to maintain the action brought, or its right to maintain such action jointly against defendants. On the contrary, defendants voluntarily came in, answered, denying the charges made in the petition of failure of the Fireproofing Company to comply with its contract, but, on the contrary, alleged full performance therewith, and counterclaimed for the sum remaining unpaid of the contract price. On issue joined the jury found the facts for the plaintiff and returned a general verdict in favor of plaintiff and against defendants for the sum of $27,559.80, and also returned answer to a special interrogatory submitted, as follows:

"(4) What amount of damage, if any, do you find was caused by failure of the Fireproofing Company to perform its contract, if you find there was such a failure? A. $35,000."

On this general verdict judgment was entered against the Fireproofing Company for the amount thereof, and against the Guaranty Company for the full penalty of its bond—$25,660. From this judgment the Fireproofing Company and the Guaranty Company prosecute separate writs of error, the same being cases Nos. 3,006 and 3,007, respectively.

The original contractor, as plaintiff in error, brings and prosecutes its writ of error in case No. 3,008 contending it was entitled, as a matter of right, on the upholding of the verdict, to have judgment entered in its favor against the Fireproofing Company for the full amount of the damages found by the jury to have been sustained to the building by reason of the failure of that company to comply with the conditions of its contract as found in answer to special interrogatory No. 4, regardless of the offset claimed by it. While plaintiffs in error, defendants below, have each assigned separately more than 125 grounds of error, yet they will be considered jointly, and, as counsel in their brief and argument have condensed and resolved these many assignments of error into four propositions, all errors assigned by them will be considered in discussing such propositions, and of these in their order.

It is first insisted there was no sufficient evidence to sustain the charge made in the petition that the concrete used by the Fireproofing

Company was either composed of insufficient or defective materials or was improperly mixed or prepared, or that such defects or insufficient materials, or improper workmanship caused the injury to the building charged to have been sustained. Therefore, it is contended the court erred in refusing the request made for an instructed verdict in favor of defendants. In this regard, without attempting a statement of the evidence tending to support the allegations of the petition, we are convinced from a reading of the record there was sufficient evidence to carry the case to the jury, and the request 'for instructed verdict made by defendants was properly denied. In fact, this point was conceded by counsel for plaintiffs in error at the oral argument.

The second contention is that a recovery was permitted under the erroneous theory that by its contract the Fireproofing Company impliedly warranted the materials used in the fireproofing, and the work of mixing it and putting it in place should be such that it would be reasonably sufficient for the purpose for which it was intended, and would do no damage or injury to other parts of the building, and this contention is said to be well taken for these reasons: (a) Because the theory of an implied warranty was not presented by the plaintiffs' petition; (b) because the express warranty respecting the structural steel excluded the idea of an implied warranty respecting any other part of the work; (c) because the plaintiffs had a representative to supervise and examine the work as it progressed; and (d) because no latent defects in the fireproofing were charged or proven.

It is true the petition did not in terms charge the obligation imputed to the Fireproofing Company respecting the quality of the materials, and workmanship in the fireproofing rested upon an implied warranty, nor was it essential it should so do. It was sufficient if the contract was declared upon according to its legal effect, whether that arose from an implied or an express warranty. The petition not only set forth the contract at length, but also charged the fireproofing contemplated by the contract was to be such as would be perfect and complete when in place, and was to be of proper materials and workmanship; and it further charged the materials and workmanship did not comply with the contract, but were defective and faulty, in that the materials used were not sufficiently mixed, or mixed in proper proportions; that it thereby lost its strength of cohesion and adhesion, and became useless for the purpose for which it was intended; that the cinders used in the fireproofing were mixed with a large amount of sulphur and other chemicals which caused the fireproofing to expand in the process of drying and hardening and thereby much injury was done to other parts of the building. It is thus apparent the petition did fairly present the question of the legal effect of the contract; that is to say, it charged a warranty either expressed or implied respecting the quality of the materials and workmanship employed in producing the fireproofing work. The objection on this ground is not well taken.

Again, it is earnestly insisted the special guaranty or express warranty that the structural steel to be furnished and erected by the Fireproofing Company under the terms of the contract should carry loads as shown and specified, as a matter of law, operated to exclude from the contract in either its execution or enforcement the existence of an

implied agreement or warranty that the work of fireproofing should be done in a workmanlike manner, and when completed be reasonably sufficient for the purpose for which it was designed and contracted. Is this contention sound as applied to the particular facts of this case? At the trial the court charged the jury the contract in question did carry with it an implied warranty, as follows:

"The law implies that all work to be done under the contract should be good and workmanlike and proper, and sufficient for the purposes for which it was to be used whether the written contract so specified or not."

Was this error? In this connection it should be observed the structural steel was not to be manufactured or produced by the Fireproofing Company, but was to be purchased by it from others. Not so of the fireproofing. Its preparation and the work of putting it in place was the business in which that company was particularly engaged and which it held itself out as specially qualified to perform. By the contract it was left for it to select the materials to be used; to mix or prepare them according to its own formula; to employ and direct the laborers employed in preparing and putting the product in place. Under such circumstances surrounding the parties, in the absence of the special guaranty found in the contract as to the structural steel to be furnished and erected thereunder, there can be no doubt whatever but that the law would imply a warranty of proper workmanship and reasonable fitness for use of the completed fireproofing work, the rule in such case being this:

"Where a buyer buys a specific article, the maxim 'caveat emptor' applies; but where the buyer orders goods to be supplied, and trusts to the judgment of the seller to select goods which shall be applicable to the purpose for which they are ordered, there is an implied warranty that they shall be reasonably fit for that purpose." Cockburn, C. J., Bigge v. Parkinson, 7 Hurlstone & Norman (Eng. Exc. Rep.) 954.

Mr. Justice Harlan, delivering the opinion of the court in Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537, 28 L. Ed. 86, said:

"But when the seller is the maker or manufacturer of the thing sold, the fair presumption is that he understood the process of its manufacture, and was cognizant of any latent defect caused by such process and against which reasonable diligence might have guarded. This presumption is justified, in part, by the fact that the manufacturer or maker by his occupation holds himself out as competent to make articles reasonably adapted to the purposes for which such or similar articles are designed. When, therefore, the buyer has no opportunity to inspect the article, or when, from the situation, inspection is impracticable or useless, it is unreasonable to suppose that he bought on his own judgment, or that he did not rely on the judgment of the seller as to latent defects of which the latter, if he used due care, must have been informed during the process of manufacture. If the buyer relied, and under the circumstances had reason to rely, on the judgment of the seller, who was the manufacturer or maker of the article, the law implies a warranty that it is reasonably fit for the use for which it was designed, the seller at the time being informed of the purpose to devote it to that use."

That case arose out of the sale by a company, engaged in the construction of bridges, of certain false work erected by it in the partial fulfillment of a bridge contract; the sale being to one who was to complete the bridge and who expected, as the company understood, to use

175 F.—42

the false work in so doing. That work proved insufficient, and gave way because of latent defects therein which were not discoverable by the purchaser by reasonable inspection. In concluding its opinion, the court said:

"All the facts are present which, upon any view of the adjudged cases, must be held essential in an implied warranty. The transaction was, in effect, a sale of this false work, constructed by a company whose business it was to do such work, to be used in the same way the maker intended to use it, and the latent defects in which, as the maker knew, the buyer could not, by any inspection or examination at the time, discover. The buyer did not, because in the nature of things he could not, rely on his own judgment; and, in view of the circumstances of the case, and the relations of the parties, he must be deemed to have relied on the judgment of the company, which alone of the parties to the contract had or could have knowledge of the manner in which the work had been done. The law, therefore, implies a warranty that this false work was reasonably suitable for such use as was contemplated by both parties. It was constructed for a particular purpose, and was sold to accomplish that purpose; and it is intrinsically just that the company, which held itself out as possessing the requisite skill to do work of that kind, and therefore as having special knowledge of its own workmanship, should be held to indemnify its vendee against latent defects, arising from the mode of construction, and which the latter, as the company well knew, could not, by any inspection, discover for himself."

In the present case the defects or faults in the fireproofing were found by the jury to be such as were not discoverable by reasonable inspection on the part of the principal contractor, for the jury found for the latter, as under the evidence it properly might do, notwithstanding the court charged, as follows:

"The contract provides that the work of fireproofing was to be done under the direction of the architects, the Josselyn & Taylor Company, who had the right to inspect the work and material and condemn any part of either that in their judgment was not suitable and reasonably fit for the purposes for which it was intended, and order it removed and replaced by the Fireproofing Company, in a manner to comply with the contract. This imposed upon the architects the duty of inspecting the material and the manner in which the work was being done as it progressed, and if they discovered, or by reasonable examination and inspection could have discovered, that the Fireproofing Company was not substantially complying with its contract in any particular, and failed to condemn the work and material and order it to be replaced with work or material that did substantially comply with the contract, and with full knowledge as to such defective work or material, if it was defective, accepted without objection the same, then they, the architects, waived for the plaintiff such defective work and material, and plaintiff cannot recover for the damages caused thereby; this, however, applies only to such defects in the work or material used that were actually known to the architects, or could have been discovered by them by reasonable inspection and examination of the work."

However, the question remains, Did the special or expressed warranty as to the structural steel contained in the contract exclude the existence of this implied warranty as to the fireproofing construction work contracted for in the same writing?

It is indisputably the rule that an expressed warranty of quality in a contract of sale excludes any implied warranty of good workmanship or fitness for use. In De Witt v. Berry, 134 U. S. 306, 10 Sup. Ct. 536, 33 L. Ed. 896, Mr. Justice Lamar, delivering the opinion of the court, said:

"There are numerous well-considered cases that an express warranty of quality excludes any implied warranty that the articles sold were merchantable or fit for their intended use. International Pavement Co. v. Smith, 17 Mo. App. 264; Johnson v. Latimer, 71 Ga. 470; Cosgrove v. Bennett, 32 Minn. 371 [20 N. W. 359]; Shepherd v. Gilroy, 46 Iowa, 193; McGraw v. Fletcher, 35 Mich. 104.

"Nor is there any conflict between these authorities and others like them on the one hand, and those on the other, which hold that goods sold by a manufacturer, in the absence of an express contract, are impliedly warranted as merchantable, or as suited to the known purpose of the buyer. Dushane v. Benedict, 120 U. S. 630, 636 [7 Sup. Ct. 696, 30 L. Ed. 810], and cases there cited. It is the existence of the express warranty, or its absence, which determines the question. In the case at bar there was such an express warranty of quality in terms. Not only that, but there was a sample delivered and accepted, as such. The law is well settled that, under such circumstances, implied warranties do not exist. Mumford v. McPherson, 1 Johns. [N. Y.] 414 [3 Am. Dec. 339]; Sands v. Taylor, 5 Johns. [N. Y.] 395 [4 Am. Dec. 374]; Beck v. Sheldon, 48 N. Y. 365; Parkinson v. Lee, 2 East, 314. In Jones v. Just, L. R. 3 Q. B. 197, 202, quoted by Mr. Benjamin in his work on Sales, § 657, Mellor, J., delivering the opinion of the court, laid down among others the following rule: 'Where a known described and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still, if the known defined and described thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. Chanter v. Hopkins, 4 M. & W. 399; Ollivant v. Bayley, 5 Q. B. 288.' "

When the contract of purchase and sale is in writing, and contains an express warranty of quality, parol evidence is not admissible to show an implied warranty as to merchantability, manufacture, or fitness for use.

Mr. Justice Lamar in De Witt v. Berry, supra, quoting with approval from the opinion of Mr. Justice Story in The Reeside, 2 Sumn. 567, Fed. Cas. No. 11,657, said:

"A written and express contract cannot be controlled or varied or contradicted by a usage or custom; for that would not only be to admit parol evidence to control, vary, or contradict written contracts; but it would be to allow mere presumptions and implications, properly arising in the absence of positive expressions of intention, to control, vary, or contradict the most formal and deliberate written declarations of the parties."

When, as in this case, an article is to be manufactured and furnished by the vendor for a known, specific, and definite use of the purchaser, and the parties have evidenced the terms of their contract of sale, or some memoranda thereof, by writing, it becomes the duty of the court in construing such contract or memoranda in writing to determine whether by the terms employed in the written contract or memoranda the parties have excluded such warranties as the law would imply from the transaction between the parties; that is to say, in such case the inquiry is, Have the parties by the very terms of their contract expressed the full extent of their engagement? If so, the law binds them to what is expressed in the contract and will imply nothing more; if not, all warranties which the law implies from the transaction had, not excluded by the terms of the writing and not inconsistent therewith, will be given effect notwithstanding the writing. Thompson v. Libbey, 34 Minn. 374, 26 N. W. 1; American Manuf'g Co. v. Klarquist, 47 Minn. 344, 50 N. W. 243; Millett v. Marston, 62 Me. 477;

Ehrsam v. Brown, 64 Kan. 466, 67 Pac. 867. Viewed, then, in the light of the authorities, did the express warranty contained in the contract exclude the warranty which the law would have implied in this case in the absence of such express warranty of the structural steel work?

Cockburn, C. J., in Bigge v. Parkinson, supra, said:

"Then comes the question, whether by the particular terms of this contract an implied warranty is excluded by the express warranty. I accede to the proposition, that where both parties have agreed to abide by the arbitrament of a third person, as to whether goods to be supplied are fit for the purpose for which they were ordered, and that person decides that the goods are such as ought to be accepted under the contract, the parties are concluded by his decision. Here, if the provisions were to be supplied to the satisfaction of the East India Company's officers, so that they were to be the sole judges of whether they were fit for the purpose intended, the parties would have been concluded by their determination. But as I read this contract, in addition to the implied condition that the provisions supplied shall be fit for the purpose intended, there is superadded an express condition, not qualifying the former, but inserted for the benefit of the buyer, who undertook to supply provisions for the use of the East India Company, who were sending out troops. It was, I think, inserted to protect the buyer and guard against any dispute; so that, if the provisions did not at once pass survey, others should be shipped in their place. The seller having supplied provisions unfit for consumption, it is said that he has performed his contract because he has succeeded in getting the provisions passed by the officers of the company."

In Blackmore v. Fairbanks, Morse & Co., 79 Iowa, 282, 44 N. W. 548, it is said:

"'But where a chattel is to be made or supplied to the order of the purchaser, there is an implied warranty that it is reasonably fit for the purpose for which it is ordinarily used, or that it is fit for the special purpose intended by the buyer, if that purpose be communicated to the vendor when the order is given.' 2 Benj. Sales, § 966. See, also, King v. Gottschalk, 21 Iowa, 513. In this case, plaintiff had not inspected the property ordered, and had no opportunity to do so, when the order was given. On the other hand, defendant knew the use for which the property was intended. Therefore, unless excluded by the terms of the order, there was an implied warranty that the property was fit for the designed use, and that it was in merchantable condition. Appellant contends that the order, in effect, contains an express warranty that the property shall be in good order; hence that implied warranties must be excluded. It is true that, as a general rule, no warranty will be implied where the parties have expressed in words the warranty by which they mean to be bound (2 Benj. Sales, § 1002); but the rule does not extend to the exclusion of warranties implied by law, where they are not excluded by the terms of the contract. Thus, an express warranty of title does not exclude an implied warranty of quality. 2 Benj. Sales, § 1002, note 40, and cases therein cited; Merriam v. Field, 24 Wis. 640; Boothby v. Scales, 27 Wis. 632; Roe v. Bacheldor, 41 Wis. 360; Wilcox v. Owens, 64 Ga. 601; 10 Amer. & Eng. Cyc. Law, 109. A warranty will not be implied in conflict with the expressed terms of the agreement; but there is no conflict of that kind in this case. The implied warranty that the machinery is fit for the use for which it was purchased is in harmony with the provisions specifying the power of the engine and boiler, and that it should be in good order, except from exposure to the weather, at Lesterville. We think the instruction in question was correct, and that those asked by defendant were properly refused. This conclusion is not in conflict with the cases relied upon by appellant, among which are Warbasse v. Card, 74 Iowa, 306 [37 N. W. 383]; Mast v. Pearce, 58 Iowa, 579 [8 N. W. 632, 12 N. W. 597, 43 Am. Rep. 125]; and Nichols v. Wyman, 71 Iowa, 160 [32 N. W. 258]."

In Boothby and Others v. Scales, 27 Wis. 626, it is said:

"In Merriam v. Field, supra, it was held by this court, on the authority of an Exchequer Chamber decision, that the taking of a written memorandum containing certain express warranties upon other points, did not exclude a warranty, which the law implies, and that the purchaser might sue for and recover damages upon a breach of such implied warranty."

In Wilcox, Gibbs & Co. v. Owens, 64 Ga. 601, it is said:

"The guaranty that the article comes up to Dr. Means' analysis does not expressly exclude the warranty that it is merchantable and reasonably suited to the use intended—to wit, the manuring the land and increasing the crop. The purchaser had a right to stipulate for both, and not to buy unless both were in the contract, and both might well consist without the overthrow of either. The one the law gave the purchaser; the other the express contract gave him. Now, if in the express contract it had been covenanted that only this guaranty or warranty should be considered given, that none other was intended, or that any other was excluded, or that the only defense to the note should be that the thing sold did not fill the standard of Dr. Means' analysis, or any words to any such effect were in the express agreement, then this implied warranty of our Code would be excluded, but not otherwise. And on this line are the decisions of this court uniformly, so far as we recall them."

Applying the foregoing principles to the contract between the parties in this case, and the situation is this: The original contractor desired to purchase from and have erected by the Fireproofing Company certain structural steel which the Fireproofing Company did not manufacture but purchased from others, and as to which, under the circumstances surrounding the parties, the law would raise no implied warranty that it should carry the loads to be placed thereon, hence, the buyer exacted from the seller in the contract of purchase a special guaranty or express warranty that the steel to be furnished and erected thereunder would carry such loads as the specifications disclosed would be placed thereon. At the same time, the original contractor, desiring certain fireproofing construction work done on the building, by the same written instrument contracted for this work to be performed under such circumstances as we have seen the law would imply a warranty that it was made of proper materials, and when completed would be reasonably suitable for the use desired. Because the Fireproofing Company was by the terms of the contract to use its own formula of preparation and exercise its own choice of materials to be used in the preparation, and as it was to be mixed and put in place by the employés of that company, therefore, as in such case the law, which all are conclusively presumed to know, implied a warranty, it must be thought an express warranty was intentionally omitted by the parties from the contract as wholly unnecessary. Hence, we hold in this case the express warranty of the structural steel found in the contract does not exclude, and is not inconsistent with, the operation of the implied warranty of the fireproofing work as charged by the court.

Again, it is insisted as ground for reversal that as plaintiff had on the ground the architects in charge of the erection of the building it was their duty to examine and supervise the work as it progressed, and if the materials used or the manner of performing the work was not in accordance with the provisions of the contract it was their duty to have rejected such portions of the work promptly, and their failure to so do in this case, and their conduct in allowing the building to proceed

to completion, the making of estimates and recommending payment thereof, operated as a waiver of compliance on the part of the Fireproofing Company, and more especially so as in this case the defects were open and obvious to all, and many authorities are cited and relied upon as sustaining this contention. United States v. Barlow, 184 U. S. 123, 22 Sup. Ct. 468, 46 L. Ed. 463; Chicago & Santa Fé Railroad v. Price, 138 U. S. 185, 11 Sup. Ct. 290, 34 L. Ed. 917; United States v. Gleason, 175 U. S. 588, 20 Sup. Ct. 228, 44 L. Ed. 284; Sheffield, etc., Railway Co. v. Gordon, 151 U. S. 285, 14 Sup. Ct. 343, 38 L. Ed. 164; Memphis Trust Co. v. Brown-Ketchum Iron Works, 166 Fed. 398, 93 C. C. A. 162; Choctaw & M. R. Co. v. Newton, 140 Fed. 225, 71 C. C. A. 655; Ashland, etc., Co. v. Shores, 105 Wis. 122, 81 N. W. 136; Young v. Stein, 152 Mich. 310, 116 N. W. 195, 17 L. R. A. (N. S.) 231, 125 Am. St. Rep. 412, and many other cases.

Neither the existence nor the soundness of the rule here contended for, where applicable, can be denied. It is undoubtedly competent for parties to a building or other construction contract to stipulate therein that the work to be performed under the contract shall be done under the supervision of an engineer, architect, or other named person in charge whose judgment and decision in all matters of difference between the parties shall be final and conclusive. Under such contract, when made, the decision of the arbiter chosen, in the absence of fraud, collusion, or such gross mistake as will imply bad faith, is forever conclusive. The cases above cited, and many others that may be found, affirm the existence and soundness of this rule where applicable.

However, the question here is, Did the parties so contract in this case, and thus make it the law of the case? As has been seen, article I of the contract, among other things, provides:

"Work to be executed as shown on drawings and described in specifications prepared by the Josselyn & Taylor Co., architects, in connection with the drawings submitted by the contractor, and which are a part of this contract."

Article II provides:

"It is understood and agreed by and between the parties hereto that the work included in this contract is to be done under the direction of the said architects and that their decision as to the true construction and meaning of the drawings and specifications shall be final."

"Article IV. The contractor shall provide sufficient, safe and proper facilities at all times for the inspection of the work by the architects or their authorized representatives; shall, within twenty-four hours after receiving written notice from the architects to that effect, proceed to remove from the grounds or buildings all materials condemned by them, whether worked or unworked, and to take down all portions of the work which the architects shall by like written notice condemn as unsound or improper, or as in any way failing to conform to the drawings and specifications, and shall make good all work damaged or destroyed thereby."

However, the specifications for the doing of the work adopted as a part of this contract further provide:

"Each bidder must understand that, should his proposal be accepted, inspection of or payment for any part of the work embraced therein by the Cedar Rapids Hotel Company will not relieve him of responsibility to remedy any defective materials or workmanship at his expense, at any time before

final inspection and acceptance and final payment for all the materials and work contemplated and embraced in his proposals."

And article X of the contract provides:

"It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract except the final certificate or final payment, shall be conclusive evidence of the performance of this contract either wholly or in part and that no payment shall be construed to be an acceptance of defective work or improper materials."

From the provisions of the contract above quoted it is clear the work was to be done under the supervision of the architects; that their decision as to the true construction and meaning of the specifications and drawings was final; that they might condemn materials or work, and cause it to be removed from the building and ground. However, it is equally clear the contract does not make the acts and decisions of the architects binding and conclusive on the parties in any sense except as to the true construction of the specifications and drawings. The contract under consideration, in this aspect, does not differ in legal effect from that construed by the Supreme Court in Mercantile Trust Co. v. Hensey, 205 U. S. 298, 27 Sup. Ct. 535, 51 L. Ed. 811, wherein Mr. Justice Peckham, delivering the opinion of the court, said:

"The other ground taken for a reversal in this case is that the architect's certificate of July 29, 1901, was conclusive between the parties, and was a bar to the maintenance of this action. Mr. Palmer, in his letter or certificate, reported the completion of the buildings according to his interpretation of the plans and specifications, and that where deviations had been made from them it was where the same were inconsistent and ambiguous, and in all cases of inconsistency and ambiguity the work had been done according to the interpretation most beneficial to the houses. We do not think this certificate was conclusive, and it did not, therefore, bar the maintenance of this action. The language of the contract, upon which the claim is based, is set out in the foregoing statement, and while it provides that the work shall be completed agreeably to the drawings and specifications made by M. D. Hensey, architect, in a good, workmanlike, and substantial manner, to the satisfaction and under the direction of Bates Warren, or the architect placed in charge by him, to be testified by writing or certificate under the hand of Bates Warren, or the architect placed in charge by him, it omits any provision that the certificate shall be final and conclusive between the parties. In other words, the contract provides that before the builder can claim payment at all he must obtain the certificate of the architect; but, after such certificate has been given, there is no provision which bars the plaintiff from showing a violation of the contract in material parts, by which he has sustained damage. A contract which provides for the work on a building to be performed in the best manner and the materials of the best quality, subject to the acceptance or rejection of an architect, all to be done in strict accordance with the plans and specifications, does not make the acceptance by the architect final and conclusive, and will not bind the owner or relieve the contractor from the agreement to perform according to plans and specifications. Glacius v. Black, 50 N. Y. 145 [10 Am. Rep. 449]; Fontano v. Robbins, 22 App. D. C. 253. * * *

"The whole contract shows, in our opinion, that the certificate that the houses had been completed according to the contract and its plans and specifications was not to be conclusive of the question, and the plaintiff was not thereby precluded from showing that in fact the contractor had not complied with his contract, and the plaintiff had thereby sustained damage. The cases cited in the opinion of the court below (Fontano v. Robbins, 22 App. D. C. 253; Bond v. Newark, 19 N. J. Eq. 376; Memphis, etc., R. R. Co. v. Wilcox, 48 Pa. 161; Adlard v. Muldoon, 45 Ill. 193), are, in substance, to this effect. To make such a certificate conclusive requires plain language in the contract. It is not to be implied. Central Trust Co. v. Louisville, etc., R. R. Co. [C. C.]

70 Fed. 282, 284. The cases of Sweeney v. United States, 109 U. S. 618 [3 Sup. Ct. 344, 27 L. Ed. 1053], Martinsburg, etc., Railroad Co. v. March, 114 U. S. 549 [5 Sup. Ct. 1035, 29 L. Ed. 255], Chicago, etc., Railroad Co. v. Price, 138 U. S. 185 [11 Sup. Ct. 290, 34 L. Ed. 917], Sheffield, etc., R. R. Co. v. Gordon, 151 U. S. 285 [14 Sup. Ct. 343, 38 L. Ed. 164], were all cases in which the contract itself provided that the certificate should be final and conclusive between the parties. The only case in which the certificate of the architect or his decision was by the contract made final was in case of doubt as to the meaning of drawings, in which case reference was to be made to the architect in charge, whose decision was to be final."

See, also, United States v. Walsh, 115 Fed. 697, 52 C. C. A. 419; Central Trust Co. v. Louisville, etc., Ry. Co. (C. C.) 70 Fed. 282; Railroad Co. v. Wilcox, 48 Pa. 161.

It is further contended as the defects in the building appeared long before its completion, and were open and visible and not undisclosed, and as the Fireproofing Company was permitted to continue the use of the defective concrete to a completion of its contract, with the full knowledge of the architects in charge, the right of the plaintiff to withhold payment of the remainder of the contract price or to recover damages for faulty construction must be held to have been waived.

In considering the weight to be given to this contention, it must be ever borne in mind, as has been seen, the architects were not empowered by the contract between the parties to bind plaintiff to an acceptance of the work as it progressed by their decision as to whether such work done was a fulfillment of the terms of the contract. The system of fireproofing, including the kind of concrete used, was, under the terms of the contract, left to the decision of the Fireproofing Company, so long as it fulfilled all requirements of the contract. While the fact that the walls of the building, from some cause, did crack and break was known long before the completion of the building, not only to the architects in charge, but to all parties concerned, yet the cause which produced this result, or the extent to which the injury would go, or the damages extend, was wholly unknown and undiscovered, hence this action was brought to have investigated and determined the cause of the injury to the building, and the extent of damages sustained, it being the contention of the plaintiff the cause lay in the kind of ingredients used and the manner employed in the manufacture of the concrete work done by the Fireproofing Company, which, as contended by plaintiff, constituted a breach of its contract. On the contrary, it was contended by defendants below the contract of the Fireproofing Company had been fully performed and faithfully carried out. The Fireproofing Company therefore denied breaching its contract, or its liability for damages sustained, and sought to recover the balance unpaid of the contract price.

In our opinion the acts and conduct of the architects in not rejecting the concrete work as it progressed, in making estimates and recommending payments thereon to the Fireproofing Company long after the architects had discovered and knew of the cracking of the walls and other defects in the building, were proper and pertinent evidential facts for the consideration of the jury under the issue joined; yet, as the architects in charge under the terms of the contract were not empowered to bind and foreclose plaintiff from litigating the quality of

the fireproofing, plaintiff cannot by such acts and conduct of the architects be held to have conclusively waived its right to do so.    United States v. Walsh, supra; Brigg v. Hilton, 99 N. Y. 517, 3 N. E. 51, 52 Am. Rep. 63; Flannery v. Rohrmager, 46 Conn. 558, 33 Am. Rep. 36; Moulton v. McOwen, 103 Mass. 587; Railroad Co. v. Wilcox, 48 Pa. 161; Monahan et al. v. Fitzgerald, 164 Ill. 525, 45 N. E. 1013; Van Buskirk v. Murden, 22 Ill. 446, 74 Am. Dec. 163; Korf v. Lull, 70 Ill. 420; Mitchell v. Wiscotta Land Co., 3 Iowa, 209. This question was under proper instructions submitted for the consideration of the jury.

The only remaining claim of error to be considered is stated by counsel in the brief for plaintiffs in error, as follows:

"The plaintiff at various times changed its pleadings as to the character of its damage. Finally it was permitted, in a suit upon the bond, to recover from the principal upon the theory that it was liable in excess of the penalty, and against the surety for the amount of the penalty. Without any proof of claim or requirement made or established on behalf of the owner against the original contractor, the latter was permitted to recover against the subcontractor for all damages done to the owner's building, estimated upon the basis of what it would cost to repair the same and make a perfect building thereof."

It is true, as shown by the record, the petition and claims of the plaintiff were several times amended before trial. Part of such amendments appear to have been made voluntarily by plaintiff and other parts in compliance with orders of the court secured by defendants on motions to make the petition of plaintiff definite and certain.    However, whatever changes were made in the pleadings of the plaintiff seem to have been sanctioned and allowed by the trial court in the exercise of its discretion, and constitute no ground of error.

It is further true, as shown by the record, plaintiff below was permitted to recover in a joint action against the Fireproofing Company for breach of its contract the entire damage to the building, estimated on the basis of what it would cost to repair it to comply with the contract, and against the Guaranty Company on the surety bond given by the Fireproofing Company as principal, and the Guaranty Company as surety, for the full penalty of the bond, and this without any showing made that plaintiff had been required to or had in any manner responded to the hotel company for damages sustained by it by reason of the defective and faulty condition in which the building was constructed.    However, it would seem from an examination of the record altogether stale and unprofitable to consider how much of merit there is in this contention now made by plaintiffs in error.    As has been seen by the statement of facts above made, the propriety of plaintiff's maintaining this joint action and the right to recover damages for breach of the contract from the Fireproofing Company, based on what it would cost to repair the entire building, before plaintiff had been compelled to respond in damages to the hotel company, or had adjusted and settled such damages with that company, was not raised in appropriate manner for decision by the trial court, but the court was invited by requests to charge made by defendants to proceed to a determination of the issues joined in this case before the matters in difference between the plaintiff and the hotel company had been determined and

adjusted. As shown by the record at the trial, the defendants requested the court to charge as follows:

"You are instructed that before you can allow anything to plaintiff either on its original petition or by way of deduction from the counterclaim of the General Fireproofing Company, you must find that the plaintiff is liable for such amount to the Cedar Rapids Hotel Company, or that the Cedar Rapids Hotel Company would have the right to make a deduction from the claim of Wallace & Son against it of such amount, and if, under the evidence and the instructions of the court, you do not find or come to the conclusion that the Cedar Rapids Hotel Company had any right to withhold from Wallace & Son the balance unpaid on the contract between Wallace & Son with the Cedar Rapids Hotel Company, then I instruct you and charge you that Wallace & Son would be entitled to no deduction on their contract with the General Fireproofing Company."

The record further shows the court did charge as follows:

"It was the duty of the Fireproofing Company to use suitable material for the fireproofing, and mix or prepare the same in a good and workmanlike manner, even though it is not so expressed in the contract, so that it would be reasonably sufficient for the purposes for which it was intended, and do no damage or injury to the walls of the building; and, if it failed to so do, then it did not substantially comply with its contract, and it is liable to the plaintiff for the defects in such concrete and the injury to the walls, if any, casued thereby, to the same extent, and that only, that plaintiff would be liable to the Hotel Company because of such defects, and which the Hotel Company might recover from the plaintiff; and if the Hotel Company, under the evidence before you, could not recover of the plaintiff for any damages to the building, then the plaintiff cannot recover of the Fireproofing Company for any such damages."

It is knowledge common to all, the judgment of a trial court rendered in the exercise of its jurisdiction may be reviewed and reversed on those questions of law only raised for decision in the trial court; that the theory of the rights of the parties adopted in the trial court and there acquiesced in by all the parties thereto will be adopted by the appellate court on review; and that a party who expressly invites the trial court to err in its rulings cannot thereafter be heard to complain of error in such rulings. Baltimore & Potomac R. R. Co. v. Mackey, 157 U. S. 72, 15 Sup. Ct. 491, 39 L. Ed. 624; Nashua Iron & Steel Co. v. Brush, 91 Fed. 213, 33 C. C. A. 463.

From this review of the questions presented in the record, in so far as cases Nos. 3,006 and 3,007 are concerned, we find no error sufficient to work a reversal of the judgment entered.

Turning now to case No. 3,008, wherein plaintiff below complains of the action of the trial court in refusing to enter judgment in its favor and against the Fireproofing Company for the full amount of the damages found to have been sustained to the building by reason of that company failing to comply with its contract, as shown by the answer returned by the jury to special interrogatory No. 4, instead of in the amount found in the general verdict, it is sufficient to observe: While much is said in the briefs of counsel as to the effect of a special verdict, when directed and returned into a federal court, on the general finding of the jury, we may safely lay that question aside from consideration in this case, and for this reason: If the Fireproofing Company had fulfilled its contract with the plaintiff, it would unquestionably have been entitled to receive and would have received the unpaid

portion of the contract price. While the jury found by both its general and special verdicts that company did not perform but did breach its contract, for which it was held liable to plaintiff in damages in the sum of $35,000, yet, the measure of such damages, as fixed by the trial court in its charge to the jury, was the reasonable cost of placing the defectively constructed building in such condition as to comply with the contract. In this respect the court charged as follows:

"If you find from the evidence that the Fireproofing Company failed to comply with its contract, and that the architects did not approve the work, or knowingly waived the defects therein, as hereafter to be stated, then you will consider and determine the damages to the building caused by the failure of the Fireproofing Company to perform its contract. The measure of such recovery is the reasonable cost of making the work conform substantially to that required by the contract. If this can be done without taking out the work and replacing it anew, the reasonable cost or expense of so remedying it will measure the amount of the recovery. If this cannot be done, and the fireproofing has to be taken out and the walls rebuilt anew, then the reasonable cost of doing that will be the measure of recovery. In either case the amount of the recovery must be limited to the actual, necessary, and reasonable cost or expense of doing that which is necessary to substantially comply with the contract. No speculative amounts, or damages by way of punishment to the Fireproofing Company, or not based upon substantial facts showing with reasonable certainty the amount required to make the work conform to the contract, can be allowed."

Therefore, as the Fireproofing Company was charged by the verdict of the jury with the duty of responding in damages in the full amount reasonably necessary to be expended by plaintiff to repair and replace the defectively constructed building in precisely the same condition it would have been if that company had in all respects fully performed its contract, the jury in its general verdict deducted from this sum the balance unpaid on the contract and returned its general verdict in such amount, and thus made its general verdict conform to the special finding. And in so doing all parties were placed in the same position as though the contract had been fully carried out and performed by the Fireproofing Company. In this respect we think the judgment is fair, just, and right, and should be affirmed, and this notwithstanding the argument made as to the technical rules of procedure applicable in the local courts of the state.

It follows the judgment entered must in all things be affirmed, and it is so ordered.

